(112 App. Div. 717)

PEOPLE v. JOYCE.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

PARENT AND CHILD—ABANDONMENT OF CHILD—CRIMINAL RESPONSIBILITY.

Pen. Code, § 287, provides that a parent or other person having the care or custody, for nurture or education, of a child under the age of 14 years, who deserts the child in any place with intent wholly to abandon it, is punishable by imprisonment for not more than 7 years. Held, that the words "in any place" are not mere surplusage, but are important in construing the statute, and to make out a crime thereunder it is necessary to show that the child is deserted in a place, and is so left with intent wholly to abandon it; and a father's leaving his children, two and three years of age, respectively, with their own mother, is not such a desertion and abandonment as the section intends to punish.

Appeal from Onondaga County Court.

Charles M. Joyce was convicted of abandoning children, and he appeals. Reversed, and defendant discharged.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Harley J. Crane, for appellant.
William L. Barnum, Dist. Atty., for the People.

KRUSE, J. The defendant was convicted, under section 287 of the Penal Code, of abandoning his two children, both of whom were under the age of 14 years. Defendant and his wife lived together in the city of Syracuse, keeping house. They were married in 1899, and had two children, one aged three years and the other two, who were living with them. He worked as a freight handler for a railroad company, receiving $1.50 a day. The defendant contended that his wages went to his wife; she bought the groceries. She admitted receiving some of his wages, but not all of them. Differences arose between them over matters, most of which seem very trivial, and need not be stated here. So far as the record discloses, both seem to have been of good moral character. On the 2d day of August, 1904, defendant and his wife quarreled about the wife loaning coal to her brother, to which he objected. The defendant states he told his wife that if she wanted to go she was at liberty to do so, and that she proposed that he go and leave her the furniture, to which he assented; and he also states that he agreed to pay her $10 a month for the children. She denies this, although it does appear that he gave her a bill of sale of his interest in the furniture. He left about 5 o'clock in the afternoon of the 2d of August, and remained with his father and mother in Syracuse until August 11th, when he went to Columbus, Ohio. He did not take the children with him, but left them with his wife. She contends that he left her no money or means of support. He obtained employment in Columbus about the 23d of August, and on the 28th of August, 1904, the defendant wrote to his mother from Columbus, advising her that he had found work, and concluded his letter as follows:

"Now I wish you or some of the others would see Nellie [defendant's wife], and find out what arrangements she has made, and what her address is, and let me know, and ask her for me not to dispose of the goods until she hears from me. I am sorry that I came away, but I am not going back unless I cannot make it go here. But I will help Nellie from here, and will make a home here if she will come."

Within two weeks after obtaining employment, and on the 4th of September, he wrote to his wife as follows:

"Columbus, Ohio, September 4th, 1904.

"My wife Nellie: For your are my wife in spite of all that has happened, for the marriage tie is one that is not so easily broken, and I have found it so by experience for I cannot get away from the past. Now Nellie I want to tell you that I am the most sorry and miserable man in the world, and I want to tell you that I am sorry for everything that I have said or done against you. Nellie there is not any time day or night that I do not think of you and the children; I will imagine at night that I hear the children calling for me. Now Nellie I want to ask you to forgive me; I should not have come away from there as I did only your lawyer, Mr. Wortman threatened me that unless I gave you half of my wages that he would bring me before the law, and you know that I couldn't give you that much and leave and pay the debts that I owed, but I am sorry that I came away, but I do not feel that I could come back there, but I would like very much to have you come here and let us start over again and try to live right. I am going to do different than I have done and if you will only come here I will live different in my home and church life than I did before. Now please Nellie decide this yourself

without any lawyer or anyone else, and please write to me and let me know, and write to me about yourself and the children. Direct to 1194 Rich Street, Columbus, Ohio. From                                    Charlie."

And at the same time he wrote to his mother as follows:

"I received your letter Friday and was glad to get it, but was rather disappointed for you did not write anything that you said to Nellie or what she said to you, nor you did not say anything about the children. I have written a letter to Nellie this morning. I wish you would go to see her as often as you can and write me about them. I have caught one of my bad colds and am nearly sick and am out of money and discouraged to death. I will not get any money to amount to anything until the 15th of October, and I do not know what I am to do from now until then. Could you not let me have five dollars in some way until then and I would pay it back with interest then. Well, mother I am so near sick that I cannot write any more this time."

His wife does not seem to have replied to the letter written by him to her. On the 26th day of October, 1904, the defendant was indicted for the abandonment of his two children, under section 287 of the Penal Code. He was tried in February, 1905, and convicted, and on February 14, 1905, was sentenced to imprisonment in the Onondaga County Penitentiary for one year. From the judgment of conviction, he has appealed to this court.

At the close of the case for the people, the defendant's counsel moved for the acquittal and discharge of the prisoner, upon the ground that no case had been made out against the defendant; that it had not been shown that the defendant abandoned his children, or intended to abandon them. A motion for a new trial was also made upon the grounds, among others, that the court misdirected the jury, that the verdict was not warranted by the evidence and was contrary to law, and upon the exceptions.

Numerous exceptions were taken by the defendant's counsel to rulings upon questions of evidence, some of which we deem so prejudicial to the defendant that of themselves they furnish sufficient grounds for granting a new trial. It is, however, unnecessary to call attention to them, for we think there was such a failure to make out the crime against the defendant of which he was convicted that the judgment should be reversed, and the defendant discharged.

The indictment charges that on the 11th day of August, 1904, at the city of Syracuse, the defendant deserted these two children with the intent wholly to abandon them, but it names no specific place, and the proof does not show that he so deserted them in any place, within the meaning of section 287 of the Penal Code. That section reads as follows:

"A parent, or other person having the care or custody, for nurture or education, of a child under the age of fourteen years, who deserts the child in any place, with intent wholly to abandon it, is punishable by imprisonment for not more than seven years."

Numerous statutes have been passed from time to time in our state for the protection of children. One of the earliest was section 35, art. 2, tit. 2, c. 1, p. 4, Rev. St. 1829. It provided:

"If the father or mother of any child under the age of six years, or any other person to whom any such child shall have been confided, shall expose such child in any highway, street, field, house or outhouse, with intent to wholly

abandon it, he or she, shall, upon conviction, be punished by imprisonment in a state prison not exceeding seven years, or in a county jail not more than one year."

To which the commissioners added this note: "New, unfortunately proved by some recent instances to be very necessary."

Section 287 of the Penal Code is founded upon and superseded the section contained in the Revised Statutes. It has remained unchanged since its adoption in 1881, except that in 1902 the punishment prescribed was imprisonment for not more than 7 years, and in 1903 the age of children to be protected by its provisions was raised from 6 to 14 years, so that as the section now stands it applies to children under the age of 14 years, and the punishment prescribed for offending against its provisions is imprisonment for not more than 7 years. We are not aware that there is any reported case in which this section of the Penal Code or the section of the Revised Statutes which it superseded has received a judicial interpretation. The Legislature of the state of Michigan adopted, in substance, the section as contained in the Revised Statutes of our own state, and the Supreme Court of that state (Shannon v. People, 5 Mich. 71), in passing upon that section, held that the exposure was the substantive act, and the intent to abandon the secondary ingredient; both must concur to complete the offense, and that the exposure contemplated by the section "must be such as may subject the child to hazard of personal injury, such as may peril the life or health of the child, or produce severe suffering or serious bodily harm; and hence that to leave a child, with the intent wholly to abandon it, 'in a house or other place where it would be certain to be cared for,' would not contemplate the exposure contemplated by the statute." While the words "expose any such child in any highway, street, field, house, or outhouse," as contained in the Revised Statutes, have been changed in the Penal Code to the broader and more comprehensive statement "deserts the child in any place," it still requires more than mere desertion or abandonment of the child or failure to provide for it to make out the crime. That is quite obvious when this section 287 is considered in connection with the following sections of the Penal Code relating to abandonment and other acts of cruelty to children. The next succeeding section makes it a misdemeanor for "a person who willfully omits, without lawful excuse, to perform a duty by law imposed upon him to furnish food, clothing, shelter or medical attendance to a minor. * * *" In an interesting and elaborate opinion by Judge Haight, our Court of Appeals has held that in a proper case it is the duty of a parent to furnish medical attendance to his child, and if he fails he is liable criminally, under the provisions of the Penal Code. People v. Pierson, 176 N. Y. 201, 68 N. E. 243, 63 L. R. A. 187, 98 Am. St. Rep. 666. In 1905 the Legislature added a new section to this chapter. It is placed between sections 287 and 288, and numbered 287a. It provides:

"Sec. 287a. A parent or other person charged with the care or custody for nurture or education of a child under the age of sixteen years, who abandons the child in destitute circumstances and willfully omits to furnish necessary and proper food, clothing or shelter for such child is guilty of felony, punishable by imprisonment for not more than two years, or by a fine not to exceed one thousand dollars, or by both. * * *"

By the second section of the act making this amendment (Laws 1905, p. 360, c. 168) it is provided that nothing in this act contained shall be deemed or construed to repeal, amend, impair, or in any manner affect the provisions of sections 287, 288, or 289 of the Penal Code, or any other existing provisions of law relating to abandonment or other acts of cruelty to children. The criminal omission to furnish a minor child food, clothing, shelter, or medical attendance is made a misdemeanor by section 288. The criminal abandonment of a child under 16 years of age in destitute circumstances, and the criminal omission to furnish food, clothing, or shelter, is punishable by imprisonment for not exceeding two years or a fine or both, by section 287a; but the severest punishment is prescribed for the offense named in and defined by section 287. Considering these three sections together, the punishment for the different offenses, the language of section 287, as well as its history, the words "in any place" in the sentence "deserts in any place" cannot be regarded as mere surplusage; they are significant, and have an important bearing upon the construction to be placed upon this section. To make out this crime, it is necessary to show that such a child is deserted in a place, and is so left with the intent wholly to abandon it, and leaving these two children, two and three years of age, with their own mother, as is disclosed by the evidence in this case, we think is not such a desertion and abandonment as section 287 intends to punish.

The conviction should be set aside, and in the view we take of the case a new trial should not be ordered. People v. Camp, 139 N. Y., 87, 90, 93, 34 N. E. 755.

The judgment of conviction should be reversed, and the defendant discharged. All concur.