## PACIFIC POWER & LIGHT CO. *v.* STATE TAX COMMISSION

Mr. Gerald K. Drummond, Portland, Oregon, submitted a brief and argued the cause for plaintiff.

Mr. Theodore W. deLooze, Assistant Attorney General, Salem, Oregon, submitted a brief and argued the cause for defendant.

Decision for defendant rendered August 25, 1966.

EDWARD H. HOWELL, Judge.

Plaintiff filed this suit for a refund of Oregon corporation excise taxes for 1961.

Prior to June 21, 1961, California Oregon Power Company (hereinafter referred to as Copco) was a California corporation and a calendar year taxpayer doing business in Oregon and California. Copco was merged into plaintiff on June 21, 1961. On December 11, 1961, Copco filed a final Oregon corporation excise tax return for the period January 1, 1961, to June 21, 1961, and reported a net income of $3,167,000 apportioned to Oregon under the three-factor formula of property, payroll and sales. The net Oregon excise tax of $190,000 was based upon the six percent tax rate applied to the income apportioned to Oregon.

The plaintiff, as successor in interest to Copco, filed a claim for a refund with the defendant commission claiming that Copco's excise tax return for

1961 was erroneous because Copco ceased to exist as a legal entity under Oregon law on June 21, 1961, and, therefore, the provisions of ORS 317.095 in effect at the time should have applied to Copco.[1] This statute stated:

"317.095. Computation of tax upon a change of taxable status or tax rate. (1) If the taxable status of a corporation under this chapter changes, or if any rate of tax imposed by this chapter changes, and if the taxable year includes the effective date of the change (unless that date is the first day of the taxable year), then tentative taxes shall be computed by applying the rate for the period before the effective date of the change, and the rate for the period on and after such date, to the taxable income for the entire taxable year, and the tax for such taxable year shall be the sum of that proportion of each such tentative tax which the number of days in each such period bears to the number of days in the entire taxable year. A corporation shall be deemed to have changed its taxable status on the effective date of the Act under which it first becomes subject to the provisions of this chapter, and a corporation which at any time ceases to be subject to this chapter shall be deemed to have changed its taxable status at that time.

"(2) This section shall apply only to taxable years ending on and after August 3, 1955."

The defendant contends that the above statute does not apply to a corporation going out of business and that Copco's excise tax should be based on the six percent rate applied to Copco's net income allocated to Oregon during 1961, as required by ORS 317.070. This was the way Copco computed and paid the tax.

As an illustration, assuming that Copco's net income allocated to Oregon was $100,000 for the period

[1] ORS 317.095 was repealed in 1965 and replaced by ORS 317.096.

January 1, 1961, to June 21, 1961, then the tax commission would compute the tax at $6,000 based on the six percent rate provided for in ORS 317.070. Plaintiff, however, would use the formula established by ORS 317.095. This formula under the statute is based upon the net income allocated to Oregon at the rate of six percent before June 21 and a zero percent tax rate after June 21, prorated on the basis of 172/365 (172 days from January 1 to June 21) and 193/365 (the number of days from June 21 to the end of the year). The plaintiff's result would be as follows:

$$\frac{(\$100,000 \times 6\% \times 172) + (\$100,000 \times 0\% \times 193)}{365} = \$2827.00$$

■ ORS 317.095 provided for the use of the formula "if the taxable status of a corporation under this chapter changes" and stated that "a corporation which at any time ceases to be subject to this chapter shall be deemed to have changed its taxable status." The plaintiff contends that ORS 317.095 applies because Copco ceased to be subject to Oregon excise tax law and changed its taxable status on June 21, 1961, when it merged into plaintiff.

The defendant argues with substantial validity that ORS 317.095 was not intended to apply to a corporation ceasing to do business in Oregon during the tax year. In support of this argument the defendant states that utilities were placed under the corporation excise tax law for the first time in 1955 with the tax becoming effective as of August 3, 1955. Also, as companies coming under this Act would not know accurately the amount of income earned from the beginning of the

year to August 3, 1955, ORS 317.095 was enacted at the same time to create a formula for computing the tax based on the period before and after the effective date of the Act. The defendant also states that the legislature did not intend ORS 317.095 to apply to a corporation going out of business during the year as it would result in giving them a substantial tax reward for doing so.

■ However, the statute does not appear to be ambiguous. It provides for the application of the formula to a corporation which ceases to become subject to the corporate excise tax law. Copco clearly did so when it merged with plaintiff on June 21, 1961.

■ The next issue is the computation of tax liability based upon the interpretation of the formula in ORS 317.095. The statute provided that the tax shall be computed by applying the rate for the period before the change and the rate for the period after the change to the taxable income for "the entire taxable year" and that the tax "for such taxable year" shall be the sum of that proportion of each such tentative tax which the number of days in each period bears to the number of days in "the entire taxable year."

Plaintiff contends that the effective rate after its change of status on June 21 is zero and that the phrases "taxable year" and "entire taxable year" refer to a twelve-month calendar year.

The defendant contends that if ORS 317.095 applies to Copco and it ceased to exist on June 21, 1961, then the "entire taxable year" for Copco was the period between January 1, 1961, and June 21, 1961. Under the defendant's theory the denominator in the fractions would be 172 (the period from January 1 to June 21) as compared to the denominator of 365 days

used by the plaintiff. Using the same hypothetical case previously mentioned herein based on an income of $100,000, the formulas would be as follows:

*Plaintiff's formula:*

$$(\$100,000 \times 6\% \times \frac{172}{365}) + (\$100,000 \times 0\% \times \frac{193}{365}) = \$2827.00$$

*Defendant's formula:*

$$(\$100,000 \times 6\% \times \frac{172}{172}) + (\$100,000 \times 0\% \times \frac{172}{172}) = \$6000.00$$

ORS 317.010(17) defines "taxable year" as follows:

" 'Taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this chapter. *'Taxable year' includes, in the case of a return made for a fractional part of a year, the period for which such return is made.* The first taxable year, to be called the taxable year 1929, shall be the calendar year 1929." (Emphasis supplied.)

The plaintiff argues that while the above statute appears to offer a choice of alternatives for a taxable year; i.e., calendar year, fiscal year or fractional part of a year, in reality only a fiscal year or a calendar year is involved because net income in Oregon must be computed on the basis of a fixed period of twelve months. In support thereof plaintiff states that ORS 317.160 requires corporate net income to be computed on the basis of an annual accounting period— a fiscal year or a calendar year—except in cases where there is a change in the taxpayer's accounting

period under ORS 314.355 or where the tax commission terminates a taxable year in a jeopardy situation under ORS 314.440(2). Plaintiff concludes that there is no provision in Oregon law for a return for a fractional part of a year.

■ ORS 317.010(17) defining a taxable year was enacted by General Laws of 1929, ch 427, § 2(c). It is almost identical with § 200(a) of the Revenue Act of 1924 which contained the same definition of taxable year as a calendar year or a fiscal year and also stated that a "taxable year *includes,* in the case of a return made for a fractional part of a year * * * the period for which such return is made." (Emphasis supplied.) Prior to the enactment of § 200(a) in 1924 a taxable year had been defined in the Revenue Acts of 1918 and 1921 as a calendar year or a fiscal year upon the basis of which net income was computed. No mention was made of a fractional part of a year until 1924 when the federal statute was amended.

*Bankers Trust Co. v. Bowers,* 295 F. 89 (2d Cir 1923), 4 AFTR 3748, 1 USTC ¶ 87, cited by plaintiff in support of the argument that taxation of income is based on a twelve-month period and not a fractional part of a year is not helpful because it was decided under the 1921 Revenue Act before the 1924 amendment adding the fractional part of a year. *Royal Highlanders v. Commissioner,* 138 F2d 240 (8th Cir 1943), 1 TC 184, 31 AFTR 661, 43-2 USTC ¶ 9612 (1942); *Anne Jacobs v. Commissioner,* 7 TC 1481 (1946). (See also *Powrie v. Commission,* 1 OTR 13 (1962).)

The plaintiff also relies on *Helvering v. Morgan's, Inc.,* 293 US 121, 55 S Ct 60, 79 L ed 232, 14 AFTR 681, 35-1 USTC 368 (1934), which involved the construction of the net loss carry forward provisions in

the Revenue Act of 1926. In June, 1925, Morgan's, Inc. acquired all the voting stock of Haines Furniture Company. Haines filed a separate return for the first five months of 1925 and Haines and Morgan's, Inc. filed consolidated returns for the last seven months of 1925 and for 1926 and 1927. For the two periods in 1925 and in 1926, Haines suffered net losses. In 1927 it had a profit. Haines attempted to carry forward the net loss and deduct it from the 1927 profit. The government contended that the two periods in 1925 constituted two separate taxable years and consequently the three years allowed by the statute did not include 1927. In discussing the word "includes" in that part of the statute which stated "The term 'taxable year' *includes* in the case of a return made for a fractional part of a year  *  *  *  the period for which such return is made," the court found the word "includes" to be ambiguous and held that the term "taxable year" meant the calendar year 1925.[1]

The facts in the *Morgan's* case are substantially different from the instant case. The Haines Company continued to exist and file tax returns, the federal net loss carry forward statutes were involved, and there was no general effect on the amount of tax payable.

In addition to the factual difference in the *Morgan's* case the United States Tax Court and the Circuit Court of Appeals, after the *Morgan's* case, and before the amendment mentioned in the footnote, issued several decisions upholding the fractional year as compared to the twelve-month calendar or fiscal year. *Royal Highlanders v. Commissioner, supra; General*

---

[1] The Revenue Act of 1942, § 48(a) changed the word "includes" to "means." (Section 7701(a) of the present 1954 Internal Revenue Code.)

*Aniline and Film Corporation v. Commissioner,* 3 TC 1070 (1944); *Anne Jacobs v. Commissioner, supra, Economy Savings & Loan Co. v. Commissioner,* 158 F2d 472 (6th Cir 1946), 5 TC 543, 35 AFTR 527, 46-2 USTC ¶ 9410 (1946); *Pepsi Cola Co. v. Commissioner,* 155 F2d 921 (2d Cir 1946), 34 AFTR 1437, 46-1 USTC ¶ 5903.

In the *Royal Highlanders* case the United States Tax Court was dealing with federal statutes and regulations similar to the Oregon statutes and tax commission regulations and the Commissioner of Internal Revenue was taking substantially the same position as the plaintiff is in this case. Royal Highlanders had been a fraternal society created in 1896 and in May, 1937, it became a life insurance company and subject to the Internal Revenue Code for the first time. In computing Royal Highlander's net income for 1937 the Commissioner argued that petitioner's taxable year was the calendar year because its accounting year was on a calendar basis and that the taxable year concerns an accounting period and not the period for which a return was made. Sections 41, 47 and 48 of the Revenue Act of 1936 were involved. Section 41, providing that net income shall be computed on the basis of the taxpayer's annual accounting period—fiscal year or calendar year—is substantially the same as ORS 317.160. Section 47 provided for returns for a short period where there is a change in the accounting period and is similar to ORS 314.355. Section 48 contained the definition of a taxable year as a fiscal year, calendar year or fractional part of a year as previously mentioned herein. Also involved was Art 41-1 of the federal regulations in effect in 1936 which provided in part: "Net income must be computed with respect to a fixed period. *Usually* that period is 12 months and

is known as the taxable year * * *." (Emphasis supplied.)

In answer to the Commissioner's argument that the petitioner's taxable year was a calendar year because its accounting period had been a calendar year, the Court stated:

"While admitting that petitioner in its return reported only its income and expenses for the period May 4 to December 31, 1937, respondent nevertheless insists that petitioner's taxable year is the calendar year 1937 for the reason that its accounting period has been and remains on a calendar year basis. On brief he urges that the term 'taxable year,' as defined in section 48, *supra,* and as referred to in article 41-1 of Regulations 94, is concerned with the taxpayer's period of accounting for net income and not with the period for which a return is made, except in the specified instances set forth in section 47, *supra.* Article 41-1 merely provides that net income must be computed with respect to a fixed period, and *usually* that period is twelve months and is known as the taxable year. The regulation does not provide that net income must always be computed with respect to a fixed period of twelve months, and inferentially recognizes that unusual instances may arise when it must be computed with respect to a period of less than twelve months.

"Respondent's reference to section 47, *supra,* indicates he is of the opinion that unless a return for a fractional part of a year is one that is provided for in that section, then it automatically becomes a return for the full calendar year if a taxpayer keeps its books on a calendar year basis. We do not, however, so interpret this section. Its purpose was to outline a plan for computing tax liability of a taxpayer which, because of a change in its accounting period, affiliation, etc., was required or permitted by the Commissioner to make 'a separate

return' for a fractional part of a year. *Bankers Trust Co. v. Bowers, supra.* It was never intended to prevent a corporation filing its first return as a taxable entity from filing a return for the period of the year in which it received taxable income, or to require that a return so filed be held to be a return for the full calendar year when in fact it was not.

"Petitioner filed a return for the fractional part of the year 1937 during which it was a taxable entity. Section 48(a) provides that the term 'taxable year' includes in the case of a return made for a fractional part of a year the period for which a return is made. Where no return was required for a portion of the year because petitioner was an exempt corporation, its taxable year, in our judgment, constituted the period covered by the return. * * *" 1 TC, p 191.

In *General Aniline and Film Corporation, supra,* the Tax Court affirmed the principle announced in *Royal Highlanders* and applied it to a case where a corporation which had reported its income on a calendar year basis was dissolved by merger on September 20, 1940.

*Royal Highlanders* was reaffirmed in *Anne Jacobs, supra,* where a partnership was dissolved during its calendar year. The Tax Court held that a fractional period from April 1 to May 31, 1941, was a taxable year under the statute defining taxable year as a fiscal year, calendar year and including a fractional part of a year for which a return is made. The court stated that the dissolution of the partnership within its accounting period was an "unusual instance" (as mentioned in Art 41-1 in the *Royal Highlanders* case) requiring the computation of net income on a fractional basis.

What the Tax Court said in *Royal Highlanders* about Art 41-1 is equally applicable in the instant case. The defendant tax commission has two regulations, 316.160(1)-(A) and 316.160(1)-(D), which state in part:

> "Reg. 316.160(1)-(A). Computation of Net Income. Net income must be computed with respect to a fixed period. This generally is a tax year of 12 months.. However, in some instances it may be a shorter period. * * *"

> "Reg. 316.160(1)-(D). Accounting Period. In most instances the return of a taxpayer is made and his income computed for his tax year, which is the calendar year unless he has established a fiscal year. * * * Except in the case of a first return, a taxpayer shall make his return on the basis upon which he made his return for the tax year immediately preceding, unless, with the approval of the commission, he has changed his accounting period. * * *"

Regulation 316.160(1)-(A), like the federal regulation Art 41-1 discussed in *Royal Highlanders, supra,* provides that net income must be computed with respect to a fixed period. However, the regulation clearly recognizes that facts may exist where the fixed period will be shorter than twelve months.

◼ The tax commission Reg. 316.160(1)-(D) contains apparently conflicting language. The first sentence provides a general rule for computing income and filing a return on a calendar or fiscal year basis in accord with Reg. 316.160(1)-(A) and qualifies this general rule with the phrase "In most instances." This phrase when read with Reg. 316.160(1)-(A) recognizes that circumstances may occur where income is computed and a return filed for a period of less than twelve months. The regulation also states, however,

that except for his first return the taxpayer shall make his return on the same basis he made his return for the year immediately preceding. Read out of context this phrase categorically requires that all returns, except the first, be filed on the basis upon which the taxpayer filed his return for the preceding year. Standing alone this sentence would nullify ORS 317.010(17) and never allow a fractional return when a taxpayer ceased to exist. The real import of this sentence becomes apparent when Regs. 316.160(1)-(A) and (D) are read together. These regulations are attempting to establish general rules to cover cases where a taxpayer is a continuing enterprise, filing returns over several years. But these general rules are qualified with the words and phrases "generally," "however," "in some instances," and "in most instances." This apparently contradictory sentence in Reg. 316.160(1)-(D) is really only an expansion upon the general rules and is not addressed to cases involving the qualifying or excepting words and phrases.

■ On December 11, 1961, Copco filed its corporate excise tax return for the period January 1, 1961, to June 21, 1961, as its "final return." As it ceased to exist on June 21, 1961, its entire tax year ended on that date. It is agreed that in most instances net income is computed on the basis of a twelve-month calendar year. However, ORS 317.010(17) recognizes a fractional part of a year. The defendant's Regs. 316.160(1)-(A) and 316.160(1)-(D) also recognize, like the federal Art 41-1 in the *Royal Highlanders* case, that some instances may arise when net income must be computed with respect to a period of less than twelve months. As the court found in *Anne Jacobs, supra,* the termination of Copco's corporate existence on June 21, 1961, was such an exception as to require the computation of

Copco's net income for 1961 on the basis of a fractional part of the year 1961 and not the calendar year.

The order of the State Tax Commission is affirmed.

Costs to neither party.