Argued September 8, 1967, affirmed February 14, 1968

# PACIFIC POWER & LIGHT COMPANY, *Appellant, v.* STATE TAX COMMIS-SION, *Respondent.*

437 P. 2d 473

*Gerard K. Drummond,* Portland, argued the cause for appellant. With him on the briefs were Rives & Rodgers.

*Theodore W. deLooze,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Donald C. Seymour, Assistant Attorney General, Salem.

Before Perry, Chief Justice, and Sloan, O'Connell, Goodwin, Holman, Lusk and Woodrich, Justices.

LUSK, J.

This is an appeal by Pacific Power & Light Company (PP&L) from a decree of the Tax Court affirming an order of the State Tax Commission which denied the corporation's claim for a refund of alleged overpayment of its 1961 corporate excise tax. 2 OTR 420.

PP&L is a Maine corporation which does business in Oregon and other states. It brought this proceeding as the successor in interest to California Oregon Power Company (COPCo), a California corporation, which,

up to June 21, 1961, was doing business in California and Oregon. On that date COPCo and PP&L merged and COPCo ceased to do business in Oregon, thus giving rise to the dispute in this case. The question turns upon the construction and application of former ORS 317.095. That section provided:

"(1) If the taxable status of a corporation under this chapter changes, or if any rate of tax imposed by this chapter changes, and if the taxable year includes the effective date of the change (unless that date is the first day of the taxable year), then tentative taxes shall be computed by applying the rate for the period before the effective date of the change, and the rate for the period on and after such date, to the taxable income for the entire taxable year, and the tax for such taxable year shall be the sum of that proportion of each such tentative tax which the number of days in each such period bears to the number of days in the entire taxable year. A corporation shall be deemed to have changed its taxable status on the effective date of the Act under which it first becomes subject to the provisions of this chapter, and a corporation which at any time ceases to be subject to this chapter shall be deemed to have changed its taxable status at that time.

"(2) This section shall apply only to taxable years ending on and after August 3, 1955."

The method for ascertaining the excise tax liability of a corporation, the tax status of which changes, is delineated in the statute as follows: Two "tentative taxes" are computed by applying the rate before the effective date of the change and the rate for the period after such change to "the taxable income for the entire taxable year" and "the tax for such taxable year shall be the sum of that proportion of each such tentative tax which the number of days in each such period

bears to the number of days in the entire taxable year."

Plaintiff contends that the "entire taxable year" means 365 days. COPCo was doing business in Oregon for 172 days during 1961. Its net income apportioned to Oregon was $3,269,595.43. The tax rate was six per cent at that time. Under plaintiff's view, therefore, its tentative tax for the 172-day period would be:

$$\$3,269,595.43 \times 6\% \times 172/365 = \$92,444.45$$

The second tentative tax, however, would be zero, because it involves the period of 193 days after COPCo ceased doing business in Oregon, during which, of course, there was no income to which to apply the tax rate. Hence, the tax liability would be the same as the first tentative tax.

The Tax Commission takes the position that the "entire taxable year" is 172 days, the period during which COPCo was doing business in Oregon. Under this theory the first tentative tax would be:

$$\$3,269,595.43 \times 6\% \times 172/172 +$$
$$\$3,269,595.43 \times 0\% \times \quad 0/172 = \$196,175.73$$

Again, as in the case of the application of plaintiff's theory, the second tentative tax would be zero.[1]

■ The Tax Court held with the Commission on this issue. The primary contention of the Commission, however, is that ORS 317.095 has no application to

---

[1] Assuming taxable income of $100,000, the following illustrates the parties' positions in graphic form:

Computation under Commission's application of ORS 317.095:
($100,000 × 6% × 172/172) +
($100,000 × 0% × 0/172) = $6,000

Computation under PP&L's application of ORS 317.095:
($100,000 × 6% × 172/365) +
($100,000 × 0% × 193/365) = $2,827

the facts of this case; that while, by its terms, the statute applies to a corporation whose tax status changes during the taxable year and a corporation which ceases to be subject to the corporation excise tax is deemed to have changed its tax status at that time, yet the Legislature did not intend that a corporation which ceases to do business in Oregon thereby undergoes a change of tax status within the meaning of those words as used in the statute. With this contention we agree, and for the purpose of the discussion we may assume that the entire taxable year is 365 days, as urged by the plaintiff.

Prior to 1955 public utility corporations, such as COPCo, were not subject to the corporation excise tax law. They were brought under the law by Oregon Laws 1955, Chapter 592, of which section 3 became ORS 317.095. Section 6 of the Act provided:

"This Act shall apply only to taxable years ending on and after the date this Act takes effect. The exemptions removed by this Act shall continue in full effect for prior taxable years, and for the portion of the then current taxable year prior to the date this Act takes effect."

The Act took effect August 3, 1955, and it was evidently a concern of the Legislature to devise a method of apportioning the tax for the year 1955, since all the income earned by corporations first becoming subject to the Act on August 3, 1955, would not be subject to the tax. It is stated in the brief of the Commission:

"Since these companies did not know accurately the amount of income earned by them from the beginning of the year to the effective date of the Act, and the amount earned after such date to the end of the year, ORS 317.095 was enacted *as a part of the same act* (§ 3)."

With this statement, though not with the Commission's conclusion therefrom, the plaintiff does not appear to take issue.[2]

ORS 317.095 is an apportionment statute. The need for it was obviously suggested by the fact that in 1955 corporations, then first made subject to the excise tax, would earn income, not all of which would be so taxable. The purpose of the statute, however, was to provide for future contingencies as well. One of these might be a change in the tax rate, which was specifically mentioned; another, a restoration of the excise tax exemption theretofore enjoyed by the utilities. Presumably the utilities would continue to do business after either of these eventualities, would earn income not subject to the excise tax, and the apportionment formula would be applied.

The question, then, is whether the statute contemplates still another contingency—that presented by this case. When the words, "a corporation which at any

---

[2] In its opening brief plaintiff, to support its contention that COPCo's taxable year was 365 days, stated:

"The opinion below explained the reason for the enactment of ORS 317.095 by referring to one of the arguments made by the Respondent Commission:

(The matter quoted in the brief from the Tax Court's opinion is substantially the same as that we have quoted above from the Commission's brief.)

"Although exempt from taxation until August 3, 1955, Copco and other centrally-assessed corporations filed their tax returns for the full 12-month calendar year 1955. * * * The income of these corporations was computed *as if they had been taxable* for the entire year 1955. The Legislature did not intend that their income be computed for the short period that these corporations were actually taxable * * *. Instead, the Legislature intended the proration of tax liability in the manner set forth in ORS 317.095 by using two tax rates (0% and 4%) applied to the entire income of these corporations for the entire calendar year 1955."

The tax rate in 1955 was four per cent.

time ceases to be subject to this chapter shall be deemed to have changed its taxable status at that time," are read literally and without regard to other provisions of the statute or to the policy behind it, it is difficult to resist the conclusion that the tax status of a corporation which ceases to do business has changed.

It is equally difficult to understand why any body of lawmakers should have enacted a statute which, as so construed, would lend itself to the highly undesirable results illustrated by this case. If, for example, corporation A has a net income of $100,000 and remains in business throughout the year, its excise tax will be $6,000; while if corporation B, with the same net income, goes out of business in the middle of the year, under plaintiff's theory it gets off with an excise tax of $3,000.

The reason why corporation A must pay the full $6,000 is because all its income was subject to the excise tax and there was nothing to be apportioned. But that is true also of corporation B. Its entire income for the taxable year was earned while it was subject to the tax. ORS 317.095 does not purport to deal with such a state of affairs, but only with cases in which there is income subject to the tax and income not subject to the tax, or income subject to one rate of tax during a part of the year and to a different rate during the rest of the year. In other words, the statute provides for apportionment where needed and appropriate, and not when it serves no purpose.

■ Our conclusion, therefore, is that COPCo experienced no such change in taxable status as is contemplated by ORS 317.095, and its tax liability is six per cent of its 1961 net income earned in Oregon.

Plaintiff argues that ORS 317.095 is unambiguous and therefore not subject to construction. As we have

already indicated, the particular language relied on by plaintiff, "a corporation which at any time ceases to be subject to this chapter shall be deemed to have changed its taxable status at that time," is, standing alone, free from ambiguity. It is broad enough to include a corporation which ceases to do business in Oregon, but for reasons already given it should not be held that the Legislature intended to include such a corporation. Ambiguity emerges when, having in mind the reason for enactment of the statute and the purpose to be accomplished by it, the words are read in context and in light of legislative policy to accord equality of treatment to all taxpayers similarly situated.

■ The relevant rules of statutory construction were well stated for this court by Mr. Justice BRAND in *State Highway Com. v. Rawson,* 210 Or 593, 608-611, 312 P2d 849. The decision itself is an apt illustration of the correct use of the fundamental canon that it is the duty of the court in construing a statute to ascertain the intention of the Legislature and to refuse to give literal application to language when to do so would produce "an absurd or unreasonable result," but, rather, "to construe the act, if possible, so that it is a reasonable and workable law and not inconsistent with the general policy of the Legislature * * *." *Fox v. Galloway,* 174 Or 339, 347, 148 P2d 922, quoted with approval in *State Highway Com. v. Rawson,* supra, 210 Or at 610.

It is in accordance with these principles that we deem construction of the statute justified.

■ Plaintiff lays considerable stress on the fact that formerly the Commission's construction of the statute agreed with plaintiff's; that in 1965, after plaintiff's claim for refund was filed, the Commission sought and

secured repeal by the Legislature of ORS 317.095 and the enactment of what is now ORS 317.096, which expressly writes into the law the construction for which the Commission now contends as to the nonapplicability of ORS 317.095 to cases like the present. The measure in question was introduced by the House Committee on Taxation at the request of the State Tax Commission as House Bill 1593. It is sufficient to say that, while statements made by the Tax Commission to the House Committee on Taxation were contrary to the Commission's present position, and therefore constitute admissions, such admissions are not binding on the State of Oregon: *Case v. Chambers et al,* 210 Or 680, 699, 314 P2d 256.

■ In fact, though not in form, ORS 317.096 was an amendment of ORS 317.095, and the plaintiff argues that the case is controlled by the rule that where an amendment of a statute is adopted a presumption arises of an intent to change the pre-existing law: *Rieger v. Harrington,* 102 Or 603, 613, 203 P 576. We think that rule is not applicable here. The Tax Commission asked the House Taxation Committee to include in House Bill 1593 a provision to the effect that the amendments expressed the original legislative intent of ORS 317.095 and that the new statute be made retroactive. This the House Committee on Taxation refused to do, but, by way of explanation, unanimously adopted the following statement:

"April 5, 1965

"It was the unanimous feeling of the committee, and the Clerk was instructed to enter in the minutes with respect to House Bills 1181, 1572 and 1593, that the amendment to each of the bills making them prospective rather than retroactive in effect is not intended to indicate any interpretation by the com-

mittee as to the original legislative intent in enacting the ORS sections involved.

"All of these amendments pertain to sections of the law which have proved sufficiently ambiguous to give rise to controversies, some of which are still pending. The committee feels that the pending controversies should be settled upon the ultimate legal interpretation of the language as it existed at the time the controversies arose, which may or may not be in accordance with the revised language incorporated in the amendments and intended to remove the ambiguities as to the future."

Similar action was taken by the Senate Committee on Taxation in reporting the bill out. We think the record made by the two committees constitutes a disclaimer of any legislative intention that the bill, when enacted into law, should be regarded either as a clarification of, or a change in, existing law. This was a matter left for determination by the courts. In these circumstances, the presumption invoked cannot be indulged.

The decree is affirmed.