Argued January 20, reversed March 10, reconsideration denied
April 16, petition for review denied April 29, 1975

# STATE OF OREGON, *Respondent, v.* LOIS CHARLOTTE LAEMOA (No. 74-264-C), *Appellant.*

533 P2d 370

*Donald F. Myrick,* Grants Pass, argued the cause for appellant. On the briefs were Myrick, Coulter, Seagraves & Nealy and Donald H. Coulter, Grants Pass.

*Gerald C. Neufeld,* Deputy District Attorney, Grants Pass, argued the cause for respondent. With him on the brief was Robert M. Burrows, District Attorney, Grants Pass.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

## THORNTON, J.

This appeal by defendant raises a single question: Did the acts of defendant which culminated in her relinquishing her four-year-old daughter to another in exchange for a money payment constitute the crime of child abandonment as defined in ORS 163.535?

Although defendant makes several assignments

of error,[1] our principal concern is to define the elements of the crime of child abandonment under the above statute.

There is no substantial dispute as to the facts.

Defendant, who is separated from her husband, is the mother of three small children. Living next door to her was a woman who felt defendant did not love or want her four-year-old daughter. In the course of a discussion between the neighbor and defendant concerning the little girl, the neighbor asked defendant if she really loved the child and if she would be willing to permanently place the child with another family. Defendant indicated she might agree to such an arrangement, but she would not give up the little girl if it meant losing welfare money. During this discussion the neighbor suggested that someone might pay defendant if she were to place the child in their home.

Soon after the initial conversation the neighbor suggested a woman who wanted to take the little girl. Defendant expressed interest in the arrangement, but

---

[1] Defendant makes the following assignments of error, the first five of which she combined for the purpose of argument pursuant to Rule 6.21, Rules of Procedure of this court:

1. Court erred in denying defendant's motion for acquittal.

2. Court erred in denying defendant's motion for a directed verdict.

3. Court erred in instructing the jury as to the elements of "desertion" and "abandonment."

4. Court erred in failing to instruct the jury as defendant requested as to element of threat of detriment to the child.

5. Court erred in failing to instruct that there must be a coincidence of voluntary abandonment with the threat of detriment to the child.

6. Court erred in overruling defendant's demurrer to the indictment.

refused to give up the child without first meeting the woman. Prior to the arranged meeting, the party who was to take the child phoned the district attorney to explain the tentative arrangement and to seek advice. The district attorney advised her to go through with the arrangements. She was also told that police would meet with her shortly.

The parties—the woman wanting the child, a police officer posing as her husband, and the defendant —met at a local store. Defendant insisted that she inspect the home of the woman wanting the child before she would give up her child. After inspecting the house and talking with the people, defendant decided that the home environment was a good one for her child. After defendant was in the house for approximately 45 minutes the parties exchanged a check for $1,000 (a price suggested by the neighbor) and defendant left. Before defendant could drive away the police officer identified himself and arrested defendant for child abandonment.

Our child abandonment statute (ORS 163.535) came into existence as part of the 1971 criminal law revision. It reads as follows:

"(1) A person commits the crime of abandonment of a child if, being a parent, lawful guardian or other person lawfully charged with the care or custody of a child under 15 years of age, he deserts the child in any place with intent to abandon it.

"(2) Abandonment of a child is a Class C felony."

In order to deal with defendant's contentions in an orderly manner we first consider defendant's assignment that the trial court erred in denying her de-

murrer to the indictment② because the indictment failed to state a crime.

■ Defendant specifically contends that the indictment must not only allege that defendant is the mother of the child, but it must also allege that she is a person lawfully charged with the care or custody of the child.

The indictment is drafted in statutory terms. This court has consistently held that an indictment in the language of the statute is sufficient if all the elements of the crime are alleged and the statutory language is precise enough to leave no doubt in the minds of the accused and the court as to the exact offense intended to be charged. *State v. Jim/White*, 13 Or App 201, 217, 508 P2d 462, Sup Ct *review denied* (1973).

A reading of ORS 163.535 indicates that the legislature intended that three distinct classes of individuals would be subject to prosecution for this crime: " * * * parent, lawful guardian *or other person* lawfully charged with the care or custody of a child * * * ." (Emphasis supplied.) The language "lawfully charged with the care or custody of a child" conditions the phrase "other person" and is not intended to modify or qualify the term "parent."

■■ In *Davis v. Gibbs*, 39 Wash2d 481, 483, 236 P2d

---

② "The above named defendant is accused by the Grand Jury of Josephine County, State of Oregon, by this indictment of the offense of ABANDONMENT OF A CHILD.

"The said defendant on or about April 18, 1974 in Josephine County, Oregon, then and there being, did then and there knowingly and unlawfully desert Echo Alita Laemoa, a child under 15 years of age, of an age of 4 years, with the intent of abandoning the said Echo Alita Laemoa, the said defendant then and there being the mother of Echo Alita Laemoa * * * ."

545, 546 (1951), the court stated the rule applicable in the present situation as follows:

> "Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. * * *
>
> "The last antecedent is the last word which can be made an antecedent without impairing the meaning of the sentence. * * * * "

For further discussion of the so-called "last antecedent rule," *see,* 73 Am Jur2d 414-15, Statutes, § 230. *Cf., Johnson v. Craddock et al,* 228 Or 308, 365 P2d 89 (1961).

■■ Under ORS 108.040 both parents are responsible for "the expenses of the family," including the support of the children. "Parent" is definite and certain by itself and needs no other modifying or qualifying language. Use of the word "parent" by itself is a proper allegation of a necessary element of the crime.

■ In applying the standard articulated above, we find that all the elements of the crime are alleged, and that the language of the statute is precise enough to inform defendant and the court as to the exact offense charged. The court did not err in overruling defendant's demurrer.

We now turn our attention to the central problem: Did the acts of defendant constitute the crime of child abandonment as defined in ORS 163.535?

Defendant contends that the term "deserts * * * with intent to abandon" as used in the above statute means (1) a willful act of physical desertion and (2) exposure of the child to detrimental circumstances

which renders it probable that the life and health of the child could be imperiled. Defendant asserts that the evidence established neither. The state disputes defendant's interpretation of the above term, and argues that all that the term means is that defendant intended to relinquish all parental claims to the child, and that proof of this and no more is sufficient to convict.

ORS 163.535 clearly requires that the child involved be under 15 years of age, and that only a parent, lawful guardian or other person lawfully charged with the care or custody of a child may be guilty of abandonment. The dispute, however, centers over the other requisite elements of the crime.

██ It is axiomatic that the primary rule of statutory construction is to ascertain legislative intent. Concluding as we do that a patent ambiguity exists as to the meaning of the term "deserts * * * with intent to abandon" we are obliged to go to extrinsic aids to ascertain legislative intent. *Haas v. Myers,* 10 Or App 495.500 P2d 1068 (1972) ; *Thomas v. SAIF,* 8 Or App 414, 495 P2d 46 (1972).

██ One of the tools we use in ascertaining legislative intent is the legislative history of a statute. *Haas v. Myers,* supra. The use of committee reports and minutes, both of legislative committees and of special revision committees, is helpful and proper in determining the history of a statute. 2A Sutherland, Statutory Construction 203 et seq, §§ 48.06 - 48.09 (4th ed rev 1973) ; *see, The Mann Home v. Morgan,* 19 Or App 853, 529 P2d 964 (1974).

Examination of the legislative history of ORS 163.535 shows that the intention of the legislature

was to provide that in order for a parent, guardian, etc., to be guilty of the crime the state must show an intent to abandon on the part of a defendant. Minutes, Senate Criminal Law and Procedure Committee, March 9, 1971.

This research further indicates that the drafters intended that the term "abandon" was to be given its ordinary dictionary meaning and therefore need not be defined in the statute. Minutes, Criminal Law Revision Commission, April 3, 1970.

We conclude then that the proper definition of "abandon" to apply in interpreting ORS 163.535 is:

> "To relinquish or give up with the intent to never again resuming or claiming one's rights or interests in; to give up absolutely; to desert, as a person to whom one owes duty, allegiance, or the like." Webster's New International Dictionary (2d ed 1961).

As applied to our child abandonment statute, abandonment means relinquishing all parental claims to a child and foregoing all parental duties to a child.[9]

■ The state argues that nothing more is required to prove the crime. We do not agree for several reasons. First, we cannot regard the words "abandon" and "desert" as having the same meaning. It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute. *State v. Popiel,* 216 Or 140, 337 P2d 303 (1959); 2A Sutherland, Statutory Construction 63, § 46.06 (4th ed rev 1973). If we were to construe "desert" and "abandon" as having the same

[9] For a further discussion of the application of ORS 163.535, *see,* State v. Bobkiewicz, 20 Or App 479, 532 P2d 256 (1975).

meaning we would not be giving an independent meaning to the word "desert." This would be inconsistent with the rules of statutory construction.

Second, examination of the legislative history of ORS 163.535 shows that the drafters of our statute did not intend that a parent would be guilty of the crime simply upon proof of intent to abandon a child. The drafters of the statute did not intend for a defendant to be guilty of abandonment if a child was left in a place where the child would be cared for and protected. Minutes, Criminal Law Revision Commission, March 6 and April 3, 1970.

ORS 163.535 was taken from Michigan Revised Criminal Code § 7030. Proposed Oregon Criminal Code 175, Commentary § 173 (1970). As the state correctly points out, however, the Michigan statute was never adopted by its legislature and is of no value in construing our own statute. Our research does disclose, however, that the drafters of our statute also considered the New York child abandonment statute which is almost identical to our own. NY Penal Law § 260.00 (McKinney 1967). There is a dearth of case law construing the New York statute, but what there is we find most persuasive.

In *People v. Joyce,* 112 App Div 717, 721, 98 NYS 863 (1906), the New York court was construing the ancestor statute to its present child abandonment statute. The pertinent language of that statute read: "* * * who deserts the child in any place, with intent wholly to abandon it * * * ." NY Penal Law § 481, App, Penal Law of 1909 (McKinney 1967). This language is identical to the language in ORS 163.535 except "wholly" does not modify "abandon"

in our statute. In construing its statute, the New York court used as authority a construction given to a child abandonment statute by the Michigan court. The New York court noted that the Michigan statute used the language, "* * * 'expose such child in any highway, street, field, house or out-house' * * *" in lieu of "* * * deserts the child in any place * * * "; but in spite of the difference in language the New York court found that the broader and more comprehensive term still required the type of exposure to the child as expressed by the Michigan court. The New York court articulated the necessary exposure as:

> " * * * 'must be such as may subject the child to hazard of personal injury—such as may peril the life or health of the child, or produce severe suffering or serious bodily harm; and, hence, that to leave a child, with the intent wholly to abandon it, "in a house [or other place] where it would be certain to be cared for," would not constitute the exposure contemplated by the statute.' * * * " *People v. Joyce,* supra at 721.

*See also, Shannon v. The People,* 5 Mich 71 (1858); *People v. Lewis,* 132 App Div 256, 116 NYS 893 (1909).

The requirement as stated in *Joyce* is totally consistent with the intent of the drafters of our own statute.

█ We are further persuaded that the above test is correct when we look at other statutes. We are required to construe statutes as a whole with a view to effecting the over-all policy which the statutes are intended to promote. *Wimer v. Miller,* 235 Or 25, 383 P2d 1005 (1963). ORS 163.535 is not the only criminal statute which deals with the treatment of minors. ORS

163.545[4] is a child neglect statute. That statute clearly requires that a child must be left " * * * unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child." We note that ORS 163.545 is a Class A misdemeanor, whereas ORS 163.535 is a Class C felony.

Without construing ORS 163.535 to require the exposure of harm to a child as we have above would result in requiring evidence of much less serious conduct to prove a felony than to prove a misdemeanor. Such a construction would be contrary to legislative intent and would be an absurd result which we must avoid. *Haas v. Myers,* supra. *Cf., Pacific P. & L. v. Tax Com.,* 249 Or 103, 437 P2d 473 (1968).

■ Moreover the construction of ORS 163.535 contended for by the state would produce a result which would be inconsistent with fundamental principles of our criminal laws. ORS 161.095 sets forth the minimum requirements of criminal culpability. A defendant must undertake some conduct which includes a voluntary act or omission of an act which he is capable of performing before he can be guilty of a crime. In this case it is a voluntary act that is necessary rather than an omission. Defendant must also possess the requisite mental intent which must concur with the necessary act. In this case defendant must undertake some action which concurs with the intent to abandon before the crime of child abandonment can be proved.

---

[4] ORS 163.545 provides:

"(1) A person having custody or control of a child under 10 years of age commits the crime of child neglect if, with criminal negligence, he leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child.

"(2) Child neglect is a Class A misdemeanor."

We must therefore determine what conduct by the defendant is necessary to satisfy the action element of the crime of child abandonment.

We note also that in ORS 416.030 (a part of the Relatives' Responsibility Law), which makes a prior desertion and abandonment of a child by a parent a defense to a subsequent claim for support against the child for moneys paid by public welfare to that parent, the terms "desertion" and "abandonment" are both used and are used in the disjunctive. This would indicate that the legislature in framing the statute dealing with this related aspect of the parent-child relationship did not consider those terms as synonymous.

Our research into the legislative history of ORS 163.535 as well as authority from other jurisdictions leads us to the conclusion that a child must be deserted under such circumstances as to subject the child "to hazard of personal injury — such as may peril the life or health of the child, or produce severe suffering or serious bodily harm * * * ." The required exposure must concur with the requisite mental intent described above. Implicit in such a definition of the crime is that there can be no "desertion" when a child is left in a place where it will be cared for and protected.

■ Summarizing, we conclude that the elements of the crime of child abandonment are (1) desertion of a child under 15 years of age, (2) by a parent, lawful guardian or other person, (3) in any place which subjects the child to a hazard of personal injury, (4) with the intent to permanently forego all parental duties and to relinquish all parental claims to the child.

██ Here the mother left the child in a place where she knew it was safe and protected. The action element of the crime was not established because the state did not prove that the child was subject to a hazard of personal injury. Without the production of such proof the circuit court erred in not sustaining defendant's motion for acquittal.

Reversed.

LANGTRY, J., concurs in the result.