JAMES HEENAN, SHERIFF AND TAX
COLLECTOR FOR MARION COUNTY, AND
HAROLD DOMOGALLA, ASSESSOR OF
MARION COUNTY *v.*
DEPARTMENT OF REVENUE

Eddy R. Swearinger, Marion County Assistant Legal Counsel, Salem, represented plaintiffs.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered December 26, 1975.

CARLISLE B. ROBERTS, Judge.

The plaintiffs, Tax Collector and County Assessor of Marion County, pursuant to ORS 306.545, appealed from the defendant's Order No. VL 75-147, dated March 18, 1975. The order held that Warsanofi Toran, owner of 15 acres of farmland, identified as Assessor's Account No. 2080-002, was entitled to the special assessment of property taxes for unzoned farmland authorized by ORS 308.370(2) for the property tax year 1974-1975.

The Department of Revenue defended its order and Mr. Toran appeared as a witness at the trial. The problem arose in consequence of an amendment to the farm use statute in Or Laws 1973, ch 303, which became law on October 5, 1973 (see below).

The pertinent facts, arranged chronologically, are:

On January 1, 1973, 30 acres of unzoned farmland (including the subject property) were owned and farmed by Edward A. Becker. This land at the time of sale was qualified for special assessment under the unzoned farmland statute because of Mr. Becker's prior application. ORS 308.375. On April 19, 1973, Mr. Becker's 30 acres, consisting of Lots 6, 7 and 8, Woodburn Fruit Farms, were deeded to Warsanofi Toran and Afanasi Alagoz (two cousins), by Mr. and Mrs. Edward Kahut, personal representatives of the estate of Edward A. Becker, deceased. The farm use

was continued without any break, but neither of the purchasers filed an application to the county assessor for approval to continue the farm use assessment as then required by ORS 308.390 (1971 Replacement Part).

Under ORS 308.370(3), entitlement to the unzoned farm use assessment is determined as of January 1. As of April 19, 1973 (when the property was transferred), ORS 308.370(3) further provided that if the land became disqualified for farm use assessment prior to July 1 of the same year, "* * * it shall be assessed at its true cash value as defined by law without regard to this section. * * *" At the same date, ORS 308.390(2) (1971 Replacement Part) provided that approved farm use land transferred by sale became disqualified unless a new application was made for the classification within 60 days. The effect on these statutes of Or Laws 1973, ch 303, for the 1974-1975 tax year, is the important issue in this case. (A secondary issue, the effect of two notices given by the assessor, is also considered.)

On May 22, 1973, Toran and Alagoz executed deeds dividing the 30 acres between themselves and another cousin: 15 acres to Toran (the subject property in this case), 7½ acres to Alagoz, and 7½ acres to Kartal. Each continued to farm his property; none made application for special assessment provided by ORS 308.375.

The deeds were brought to the notice of the county assessor and, on August 13, 1973, the assessment roll was amended to reflect the new property ownerships and account numbers were established for them. No personal addresses for the purchasers were given to the county assessor but the documents contained notice that the deeds themselves were to be returned

to the Willamette Valley Title Company, P.O. Box 825, Salem, Oregon 97308.

The notice of the change in ownership came to the assessor's attention after July 1. However, no step was taken by the assessor's office to disqualify the farm use assessment of any part of the purchased property for 1973-1974.

On September 17, 1973, the defendant Department of Revenue addressed typed instructions "To all County Assessing Officials," calling attention to House Bill No. 2317, enacted as Or Laws 1973, ch 303, noting that the new law became effective October 5, 1973, and that it related "to specially assessed unzoned farmland." The communication stated:

"* * * The 1971 Legislature provided that, upon the sale of such land or the death of the owner of such land, a new application had to be filed within a specified time or the land became disqualified. This bill removes that provision and provides for the abatement of the additional tax for 1972-1973 and 1973-1974 and refund if paid. * * *"

The defendant's instructions stated that a problem should be anticipated in changing from the old law to the new:

"If the *notice* [of disqualification by act of the assessor, required by ORS 308.395] has not been mailed, the assessor should send a letter and application form to the owner advising him that his land will be disqualified for farm-use assessment next year [1974-1975] unless an application for such assessment is received on or before next April 1. This letter should be mailed *after* October 5 and *after* the 1973-1974 tax roll is certified for collection. If an acceptable application is not received, the additional tax would be computed and added to the 1974-1975 tax roll. The letter should

explain that the land is being disqualified due to the new owner's failure to notify you of the ownership change as required by the law in effect at that time [ORS 308.390(2) (1971 Replacement Part)]."

On October 5, 1973, Or Laws 1973, ch 303, became law, specifically amending ORS 308.390 and 308.395. In addition, it contained sections 1 and 2 which were treated as "temporary" additions to the law by the office of the Legislative Counsel and are found as a note under ORS 308.370 (1973 Replacement Part). Sections 1 and 2 of Or Laws 1973, ch 303, read as follows:

"Section 1. Notwithstanding any other provision of law, in the case of property which would otherwise have been entitled to assessment for farm use under ORS 308.370 except for the fact that the taxpayer was a new owner or a transferee by reason of death and failed to make the new application for farm use assessment in the time required by law for either or both of the tax years 1972-1973 and 1973-1974, the taxes for those years shall be abated. The amount of abatement shall be the difference between the amount of taxes actually assessed and the amount of taxes that would have been assessed had the property qualified for farm use assessment for those taxable years.

"Section 2. (1) Where taxes have been assessed under conditions described in section 1 of this Act, the officer having possession of the roll shall abate such taxes by correcting the roll as provided in subsection (3) of ORS 311.205."

The amendment to ORS 308.390 deleted the former subsection (2) which required the assessor to remove the special assessment unless a new owner made a new application within 60 days of sale or transfer and inserted a new subsection in lieu thereof:

"(2) The sale or transfer to a new owner * * *

shall not operate to disqualify land from the special assessment provisions of ORS 308.370 so long as the land continues to be used exclusively for farm use as defined in subsection (2) of ORS 215.-203."

On November 5, 1973, the plaintiff county assessor addressed a letter to Toran at 2225 Molalla Road, Woodburn, Oregon 97071 (the street address of subject property), stating that Assessor's Account No. 2080-002 (Toran's 15 acres) " * * * has been disqualified for special assessment as farm use land for the reason checked below: * * * X (3) Removal of the special assessment by the assessor upon the discovery that the land is no longer being used as farm land. * * *" Mr. Toran testified that he had never seen this notice; that the old house upon the property was useless and that, until November 1974, he lived with his father at a different address. (He had undertaken to build a new house on the subject property but could not move into it until the latter part of November 1974.) The court finds that the assessor's stated reason was in error; the land had never ceased to be used as farmland following the approval of special assessment for farm use given to Mr. Becker.

On May 6, 1974, the plaintiff county assessor mailed to Mr. Toran, at the Mollala Road address, a "Notice of Change of Assessed Valuation," indicating that the value of the 15 acres owned by Mr. Toran had been appraised for 1973-1974 at a true cash value of $5,980 for the land, but that this appraisal was increased to $17,560 for the 1974-1975 tax year. The notice gave no reason for the change. Mr. Toran testified that this notice had never been seen by him before it was shown to him on the witness stand.

On May 10, 1974, the plaintiff county assessor received an informal legal opinion from a member of

the defendant's legal counsel. Discussing Or Laws 1973, ch 303, the opinion states, *inter alia*:

> "It should be noted that Oregon Laws 1973, ch 303 does not reinstate an exemption. All it does is abate the difference in the taxes between the farm use value and the market value. The exemption is only reinstated by application for farm use for the next tax year. If no reinstatement were made for the next year, the potential additional taxes would become due. * * *"

■ The court observes that, if, at an early date in 1973, following the sale of the subject property to Toran on April 19, 1973, the assessor had acted to disqualify the special assessment pursuant to ORS 308.-390(2) (1971 Replacement Part), his order would have been valid, but it would have been rendered a nullity on October 5, 1973, by the provisions of Or Laws 1973, ch 303, §§ 1 and 2, abating taxes assessed and refunding taxes paid with respect to the 1973-1974 tax year.

As of the assessment date of January 1, 1974, as a result of Or Laws 1973, ch 303, the county assessor was confronted with an amended unzoned farm use law, effective October 5, 1973, and therefore first applicable to the assessment date of January 1, 1974, and the tax year 1974-1975. Upon examining the Farm Use Act as amended, he would find that ORS 308.370 (2) continued to provide:

> "(2) Any land which is not within a farm use zone but which is being used, and has been used for the preceding two years, exclusively for farm use * * * shall, upon compliance with ORS 308.-375, be assessed at its true cash value for farm use and not at the true cash value it would have if applied to other than farm use. * * *"

The assessor also would find that ORS 308.375 con-

tinued to require that any owner of farmland entitled to special assessment under ORS 308.370(2) must make application therefor to the county assessor on or before April 1 *of the first year* in which such assessment is desired. But April 1, 1974, was not part of the first year in which such assessment was desired by the taxpayer—and he was protected in the prior year by the approved farm use application obtained by Becker and in effect on January 1, 1973.

■ The assessor's power to amend the roll with respect to farm use was lost before he took action looking toward disqualification on November 5, 1973. And an examination of the 1973-1974 assessment roll as of January 1, 1974, in preparation for the roll for the tax year 1974-1975, must have revealed that the subject property was under farm use appraisal up to that date. The assessor, as of January 1, 1974, would then have power to change the roll by disqualifying the assessment *only* if he were specifically authorized to do so by one of the provisions of paragraphs (a) to (d) of subsection (1), ORS 308.390, as amended October 5, 1973. None of the paragraphs was applicable, under the facts of this case. The assessor could also take note that, as of October 5, 1973, looking toward January 1, 1974, ORS 308.390(2) read:

> "(2) The sale or transfer to a new owner or transfer by reason of death of a former owner to a new owner shall not operate to disqualify land from the special assessment provisions of ORS 308.370 so long as the land continues to be used exclusively for farm use as defined in subsection (2) of ORS 215.203."

The county assessor should have left the farm use classification of Account No. 2080-002 unchanged as of January 1, 1974.

■ The legislature's intent to give tax relief to a specified class of persons or property is sometimes thwarted by other statutory requirements relating to notice or time, or affirmative action by the taxpayer. Some or all of these requirements may have been deemed necessary when enacted in order to insure good tax administration. Ordinarily, they cannot be set aside by a tax administrator or court without an expression of clear intent on the part of the legislature.

■ The enactment of Or Laws 1973, ch 303, undoubtedly was intended to prevent the continuation of inadvertent termination of farm use assessments in those cases where approved farm use land is transferred to a new owner (who continues the farm use without a gap or lapse), whether the transfer results by sale from the former owner to the new or by death of the former owner. The termination of the unzoned farm use status, intended or inadvertent, involves substantial penalties, prescribed by ORS 308.-399 (1973 Replacement Part), and the legislature sought to avoid the infliction of the penalty in the factual situation of this and similar cases.

The county assessor's failure to apply the new law, effective October 5, 1973, under the facts of this case, as of January 1, 1974, was in derogation of the legislative intent—an intent which, upon consideration of the former law, of the amendments thereto and of the mischief to be cured, is undoubted and unassailable. While respecting the technical construction raised by defendant's instructions to assessors on September 17, 1973, a construction of the law as of January 1, 1974, abrogating the farm use assessment for the subject property, is deemed unreasonable, even absurd. *Cf. Pacific P. & L. v. Tax Com.,* 249 Or 103,

111, 437 P2d 473, 476 (1968), and cases cited therein.[1] Defendant's recognition of this is demonstrated by its Order No. VL 75-147, reversing its former instructions.

The special assessment provided by ORS 308.370 is deemed to have been in effect as to the subject property on December 31, 1973, and must be continued in 1974-1975 and until one of the conditions specified in ORS 308.390(1) becomes applicable.

The defendant's Order No. VL 75-147 is affirmed in all respects.

No costs to either party..

---

[1] The court notes that the assessor was completely justified in the actions taken by him. He was justified in using the street addresses of the subject property for the purpose of sending notices, since the property owner had failed to give the county assessor a better address (and the addresses for returning the deeds to a title company were no sanction for him to change his records). His notices to the taxpayer were void, because of the change in law which became effective before the notices were sent, but he was sending them upon the direction and advice of the defendant's legal counsel. His action in bringing this suit was justified by the fact that the legal advice of the defendant's counsel was contrary to the defendant's subsequent order, raising a legal question of some importance for which the remedy is provided in ORS 306.545, utilized by the county assessor and tax collector.