Pike County Light and Power Company—Electric Division, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Argued June 7, 1983, before President Judge CRUMLISH, JR., and Judges ROGERS, BLATT, WILLIAMS, JR. and DOYLE.

*Gerald A. Maher,* with him *Andrew Gansberg, Bruce V. Miller, Robert M. Axelrod* and *Paula Sil-*

*berthau, LeBoeuf, Lamb, Leiby & MacRae,* and *Christopher Zettlemoyer, Reed, Smith, Shaw & McClay,* for petitioner.

*John F. Povilaitis,* Assistant Counsel, with him *Charles F. Hoffman,* Chief Counsel, *David A. Christiansen,* Assistant Counsel, and *Albert W. Johnson,* Deputy Chief Counsel, for respondent.

*H. Kay Dailey,* Assistant Consumer Advocate, with her *Philip F. McClelland,* Assistant Consumer Advocate, and *Walter W. Cohen,* Consumer Advocate, for intervenor, Office of Consumer Advocate.

*Timothy F. Nicholson, Adler, Nicholson, Claraval & Magdule,* for Amicus Curiae, Pennsylvania Gas Association.

*Gerald Gornish, Wolf, Block, Schorr and Solis-Cohen,* for intervenor, J. O. Ryder Rendering Co., Inc.

OPINION BY JUDGE DOYLE, September 22, 1983:

This is an appeal by Pike County Light and Power Company (Pike) of an order of the Pennsylvania Public Utility Commission (PUC) which disallowed $597,917.00 of purchased power expense in the settling of rates under Pike's Supplement No. 12 to its Tariff Electric-Pa. P.U.C. No. 7.[1] We affirm.

---

[1] Pike filed Supplement No. 12 to its Tariff Electric-Pa. PUC No. 7 on January 14, 1982, to become effective March 16, 1982. The Supplement was designed to produce a rate increase of approximately $438,500 based on a historic test year ending September 30, 1981. The PUC allowed the Supplement to be suspended by operation of law until October 16, 1982 and instituted an investigation. Prior to Pike's filing of the Supplement, the PUC had instituted an investigation into Pike's purchase of power from its parent company, Orange and Rockland Utilities, Inc.

Pike operates in the vicinity of the boroughs of Matamoras and Milford in the County of Pike, Pennsylvania and serves approximately 2,548 residential customers, 426 general service customers, 4 municipal street lighting customers, and 77 private area lighting customers.[2] Pike is a subsidiary of Orange and Rockland Utilities, Inc. (Orange & Rockland), a New York State operating utility. Pike's power supply is provided by the parent company through a Power Supply Agreement filed with the Federal Energy Regulatory Commission.

Pursuant to an investigation of Pike's proposed tariff supplement, three days of evidentiary hearings were held before an administrative law judge and a record consisting of more than 200 pages of testimony, statements and exhibits was developed. On August 13, 1982, the administrative law judge submitted a Recommended Decision to the PUC, concluding that Pike's reliance on Orange & Rockland as a source of power represented an abuse of management discretion in consideration of available, alternative, more economical, supplies of electricity. Accordingly, Pike's purchased power expense was reduced $597,917.00. This resulted in a revenue increase of $361,000.00 to Pike, rather than the $438,500.00 sought in the tariff supplement.

By order adopted October 1, 1982, and entered October 15, 1982, the PUC adopted the findings and conclusions of the administrative law judge with the exception of certain mathematical errors not denied by Pike. The instant appeal followed.[3]

---

[2] As of September 30, 1981, the end of the test year.

[3] Pike was given thirty days from entry of the PUC's order to implement new rates in compliance. On November 3, 1982 Pike requested that the PUC stay its order. On November 10, 1982 Pike petitioned this Court for an emergency supersedeas. We granted a

Before this Court, Pike argues that the PUC order is barred by federal preemption under the Federal Power Act,[4] is not supported by substantial evidence, was in part arbitrary and capricious, and constitutes deprivation of property without due process of law. We will address these arguments seriatim.

### FEDERAL PREEMPTION

In *Public Utilities Commission v. Attleboro Steam & Electric Co.*, 273 U.S. 83 (1927), the United States Supreme Court struck down, as a direct burden on interstate commerce, an attempt by the Rhode Island Public Utilities Commission to regulate the rates at which a Rhode Island utility could sell electric power to a Massachusetts distributor. As a direct response to the *Attleboro* decision, Congress enacted the Federal Power Act of 1935, creating the Federal Power Commission, now the Federal Energy Regulatory Commission (FERC), and vesting it with exclusive authority to regulate the rates governing interstate sales of electricity for resale. *New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982). The Act provides, in pertinent part:

It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a

temporary stay pending disposition of the request for stay before the PUC. On November 22, 1982 the PUC denied Pike's request and our stay was vacated. Pike renewed its request for supersedeas before this Court on November 23, 1982. We granted a temporary stay which we vacated after argument on December 10, 1982. Pike petitioned the Supreme Court for a stay of the PUC order but was denied relief. Pike sought declaratory and injunctive relief before the United States District Court. Pike's complaint was dismissed under the doctrine of federal abstention from unresolved state matters.

[4] 16 U.S.C. §§824-824k (1976 and Supp. III).

public interest, and that Federal regulation of matters relating to generation . . . of that part of such business which consists of transmission of electric energy in interstate commerce is necessary in the public interest, *such Federal regulation, however, to entend only to those matters which are not subject to regulation by the States.* (Emphasis added.)

16 U.S.C. §824(a) (1976). The Act further provides, in pertinent part:

The provision of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but except as provided in paragraph (2) *shall not apply to any other sale of electric energy. . . .* (Emphasis added.)

16 U.S.C. §824(b)(1).

The language of the Act and the case law interpreting it make clear that Congress' intent was to "fill the gap" in regulation of electric power sales created by *Attleboro, see New England Power,* and to displace prior state regulation with comprehensive federal regulation of wholesale electric rates. *Federal Power Commission v. Southern Cal. Edison Co.,* 376 U.S. 205, *reh. denied,* 377 U.S. 913 (1964). Any attempt by the PUC to regulate the rates in the agreement between Pike and its parent, Orange & Rockland, therefore, would be preempted by the federal legislation.

The Consumer Advocate, intervenor in this appeal, points out, however, that the action by the PUC which is challenged here is not a regulation of wholesale rates nor a determination that Orange and Rockland's wholesale rates are unjust and unreasonable.

It is urged that the PUC action is a regulation only of Pike's retail rates, and as such proceeded, not from an analysis of Orange & Rockland's cost of service data, analysis within the exclusive jurisdiction of the FERC, but rather from analysis of Pike's cost of service and comparison with alternative costs of purchased power. Therefore, it is argued, the PUC action does not intrude on the exclusive jurisdiction of the FERC. We agree.

In carrying out its regulatory function, the FERC examines the cost of service data of Orange & Rockland to determine that its wholesale rates provide a fair return to the utility's stockholders without being unfair to Orange & Rockland's purchasers. The FERC does not analyze Pike's cost of service data or purchased power alternatives in making its determination.[5] The FERC focuses on Orange & Rockland to determine whether it is just and reasonable *for that company to charge* a particular rate, but makes no determination of whether it is just and reasonable *for Pike to incur* such a rate as an expense. The PUC, on the other hand, has no jurisdiction to analyze Orange & Rockland's cost of service data and makes no determination as to the reasonableness for Orange & Rockland to charge its rates. The PUC focuses on Pike and its cost of service data to determine whether it is reasonable for Pike to incur such costs in light of available alternatives. So while the FERC determines whether it is against public interest for Orange & Rockland to charge a particular rate in light of its costs, the PUC determines whether it is

---

[5] 18 C.F.R. §35.13 details the information to be submitted before the FERC in support of proposed rate changes. The regulations require no cost of service data to be submitted by purchasers of wholesale power.

against the public interest for Pike to pay a particular price in light of its alternatives. The regulatory functions of the FERC and the PUC thus do not overlap, and there is nothing in the federal legislation which preempts the PUC's authority to determine the reasonableness of a utility company's claimed expenses. In fact, we read the Federal Power Act to expressly preserve that important state authority.[6]

## SUBSTANTIAL EVIDENCE

Pike next argues that the alternative rate used by the PUC to determine a reasonable level of purchased power expense is unsupported by substantial evidence. Our review of the record indicates to the contrary. The record contains testimony from expert witnesses regarding the viability of power purchases from Pennsylvania Power & Light Company (PP&L) on the basis of existing PP&L rates approved by the FERC. The record contains expert testimony that a purchase from PP&L was feasible technically, that economic advantages would accrue to Pike by transmission of power from PP&L over Orange & Rockland transmission lines, and that because PP&L's

---

[6] We recognize that the Federal Power Act does not alter the limits to state authority otherwise imposed by the commerce clause or modify the earlier holdings of the Supreme Court. *New England Power*. Recent holdings of the Supreme Court have indicated, however that for state regulatory action to violate the commerce clause it must impose a *direct* burden on interstate commerce. See *Arkansas Electric Cooperative Corp. v. Arkansas Public Commission*, U.S. , 103 S.Ct. 1905 (1983). Pike argues that the PUC order in effect prohibits its purchase of power in interstate commerce. The argument is without merit. The PUC order does not hold it unreasonable for Pike to purchase power in interstate commerce; it holds it unreasonable for Pike to purchase power from Orange & Rockland. The effect on interstate commerce is incidental and indirect and does not violate the commerce clause.

generation mix was predominantly coal, its production costs were less than the predominantly oil and natural gas fired generation of Orange & Rockland. Also admitted into the record was a letter from PP&L indicating the company's willingness to discuss power sales to Pike on the basis of contemporary FERC rate schedules. In contrast, there is no evidence indicating why, in view of the cost advantages apparent in power purchases from PP&L, Pike failed to even explore this alternative to the more costly purchases from its parent company. Pike argues, however, that there is no evidence indicating whether it could have negotiated a contract at the favorable rates and terms assumed by the PUC. But having failed to pursue any discussion with PP&L, Pike cannot now complain that there are no definite contract terms from which to derive the cost of a power purchase from PP&L. *See UGI Corp. v. Pennsylvania Public Utility Commission*, 49 Pa. Commonwealth Ct. 69, 410 A.2d 923 (1980). In light of its knowledge of the industry and expertise, we do not find its calculation of a reasonable purchased power expense in these circumstances to be unsupported by substantial evidence.

Pike also argues that the record does not support the finding by the PUC that Pike abused its managerial discretion. The determination that the actions of Pike's management were imprudent flowed directly from the evidence discussed above regarding the historical availability of lower cost power from PP&L and the failure of Pike to explore this alternative. The determination is therefore supported by substantial evidence.

ABUSE OF DISCRETION

In computing the hypothetical alternative purchased power expense, the PUC did not factor in in-

creases in PP&L's wholesale rates approved by the FERC after the end of Pike's historic test year. Pike alleges this was error and constitutes an abuse of discretion. We disagree. A rate proceeding must have some finality, and for this purpose the test year is used and accepted. *Pittsburgh v. Pennsylvania Public Utility Commission,* 187 Pa. Superior Ct. 341, 144 A.2d 648 (1958). Occasionally, the PUC will, as a matter of policy, consider data beyond the end of the test year, *see Dauphin Consolidated Water Supply Co. v. Pennsylvania Public Utility Commission,* 55 Pa. Commonwealth Ct. 624, 423 A.2d 1357 (1980), but such adjustment concerning matters occurring after the test year are, to a large extent, within the discretion of the PUC. *Pittsburgh v. Pennsylvania Public Utility Commission,* 208 Pa. Superior Ct. 260, 222 A.2d 395 (1966). In order for the PUC to make a reasonable comparison of Pike's purchased power expense with alternative purchased power costs, the PUC logically chose to compare Pike's data with PP&L information during the same test period. Any consideration of subsequent changes would have necessitated consideration of parallel subsequent changes in the data Pike submitted. This would, in effect, establish a new test year. We find no abuse of discretion in the PUC's decision to limit consideration to data for the test year which Pike itself chose as typical.

## DENIAL OF DUE PROCESS

Finally, Pike argues that the PUC action constitutes confiscation of property without compensation or due process of law. Pike urges that its purchased power expenses are reasonable as a matter of law by virtue of the FERC approval of the Orange & Rockland tariffs, and the PUC denial of full recovery for

those expenses is therefore confiscatory. The argument is without merit. As developed above, FERC approval of the Orange & Rockland tariffs means only that, as a matter of law, it is reasonable for Orange & Rockland to charge such rates; FERC approval does not mean that it is reasonable for Pike to incur such costs. There is no confiscation in the PUC order.

### ORDER

Now, September 22, 1983, the order of the Pennsylvania Public Utility Commission in the above referenced matter, Docket No. R-821857, adopted on October 1, 1982 and entered on October 15, 1982, is hereby affirmed.