**G.L. SPENCE and L.P. Spence,
Appellants (Plaintiffs),**

v.

**John R. SMYTH, G. Keith Osborn, and
C.E. Johnson, as Commissioners of the
Public Service Commission of the State
of Wyoming, and the Public Service
Commission of Wyoming, Appellees
(Defendants).**

**No. 83–205.**

Supreme Court of Wyoming.

Aug. 29, 1984.

G.L. Spence and Bradley L. Booke, of Spence, Moriarity & Schuster, Jackson, for appellants.

A.G. McClintock, Atty. Gen., Lawrence J. Wolfe, and Steven R. Shanahan, Sr. Asst. Attys. Gen., for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

Effective October 1, 1982, the Federal Energy Regulatory Commission (FERC) (successor to the Federal Power Commission) approved an increase in the wholesale electric rates of the Bonneville Power Administration (BPA). BPA is a federal power-er marketing agency which produces and markets electricity in the Northwest. 16 U.S.C. § 832 et seq. BPA supplies power to, among others, Lower Valley Power & Light Company (LV), which is a rural electric distribution cooperative serving Lincoln, Sublette and Teton Counties in Wyoming and two Idaho counties. LV purchases approximately 96.5 percent of its power from BPA. After BPA's wholesale electric rates were raised, LV applied to the Public Service Commission (PSC) to pass-through this rate increase to its consumers.

The application for the pass-through rate increase was challenged by appellants, who are customers of LV. After notice and a hearing, the PSC granted the increase. Appellants appealed the PSC order to the district court, and that court certified the matter to the supreme court pursuant to Rule 12.09, W.R.A.P.

The parties raise several issues and arguments on appeal, but we believe the determinative issue to be whether or not the pass-through rate increase allowed by the PSC is just and reasonable under the circumstances. A distinction must be recognized between the regulation of BPA and its wholesale rate increase and the regulation of LV's retail rate increase. Appellants acknowledge the distinction but indi-

cate the increase in LV's retail rate should not have been allowed.

Section 37–2–101, W.S.1977, creates the PSC. It is granted the general and exclusive power to regulate and supervise every public utility in the state of Wyoming, § 37–2–112, W.S.1977. Section 37–1–101(a)(vi)(H), W.S.1977, provides:

"None of the provisions of this chapter shall apply to interstate commerce except when a regulatory field has not been preempted by the United States government. * * *"

On the other side of the coin, the federal statutes create the Bonneville project to be completed, maintained and operated, subject to the powers and duties of the BPA respecting the transmission and sale of electric energy generated at the project. 16 U.S.C. § 832.

"Subject to the provisions of this chapter [16 U.S.C. § 832 et seq.] and to such rate schedules as the Federal Power Commission may approve, as provided in this chapter, the administrator [of the BPA] shall negotiate and enter into contracts for the sale at wholesale of electric energy, either for resale or direct consumption, to public bodies and co-operatives and to private agencies and persons and for the disposition of electric energy to Federal agencies. * * *" 16 U.S.C. § 832d(a), p. 10.

16 U.S.C. § 839e(i)(6) (Supp. Pamphlet 1975 to 1983), p. 47, Pacific Northwest Electric Power Planning and Conservation Act of 1980, provides in part:

"The final decision of the Administrator [of BPA] shall become effective on confirmation and approval of such rates by the Federal Energy Regulatory Commission pursuant to subsection (a)(2) of this section. The Commission shall have the authority * * * to approve the final rate submitted by the Administrator on an interim basis, pending the Commission's final decision in accordance with such subsection. * * *"

■ Thus, pursuant to the United States Code, the FERC clearly has the authority to regulate the rates of BPA. The question thus becomes where is the line to be drawn between that which the FERC regulates and that which is within the province of the PSC.

The United States Supreme Court has considered the issue of federal versus state regulation of wholesale electric rates for years. In 1927, that Court decided that state regulation of wholesale electric rates in interstate transactions was precluded because otherwise the individual states would be placing a burden on interstate commerce. *Public Utilities Commission of Rhode Island v. Attleboro Steam & Electric Co.*, 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549 (1927). However, since Congress had not at that time enacted statutes to regulate this area, there was a void in the regulation of interstate wholesale electric rates. This void was known as the "Attleboro gap." *Northern States Power Company v. Hagen*, N.D., 314 N.W.2d 32, 36 (1981).

Congress moved to fill this "gap" with the Federal Power Act in 1935 and the Natural Gas Act in 1938. *Northern States Power Company v. Hagen*, supra. In 1964, the Supreme Court said:

"* * * In short, our decisions have squarely rejected the view of the Court of Appeals that the scope of FPC [FERC] jurisdiction over interstate sales of gas or electricity at wholesale is to be determined by a case-by-case analysis of the impact of state regulation upon national interest. Rather, Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction, making unnecessary such case-by-case analysis. This was done in the Power Act by making FPC [FERC] jurisdiction plenary and extending it to all wholesale sales in interstate commerce except those which Congress has made explicitly subject to regulation by the States. * * *" *Federal Power Commission v. Southern California Edison Company*, 376 U.S. 205, 84 S.Ct. 644, 651, 11 L.Ed.2d 638 (1964).

Appellants acknowledge that it is clearly impermissible for the PSC to set rates for BPA, but they contend that the PSC would

not be doing so by refusing to allow LV to pay such rate to BPA.

The issue in the *Northern States Power Company v. Hagen* case, supra, was similar to this case except that the North Dakota PSC was arguing what appellants here argue. We agree with that court in its concluding analysis, where it said:

"The PSC has no direct jurisdiction over interstate wholesale rates and we believe it would undermine the supremacy clause and the preemption doctrine for the PSC to indirectly assert jurisdiction over the wholesale rates by investigating the reasonableness of underlying costs in a proceeding involving retail rates. Furthermore, we believe it would frustrate the purpose of Congress in establishing reasonable wholesale rates if the reasonableness of these rates as an operating expense were inquired into by and made subject to the North Dakota PSC in establishing reasonable retail rates. If this were permitted the efforts of FERC would be reviewable by the PSC, which was not contemplated by the congressional Act." *Northern States Power Company v. Hagen*, supra, 314 N.W.2d at 38.

The North Dakota court went on to conclude that "for purposes of fixing intrastate rates, the Public Service Commission must treat [*Northern States Power Company's*] filed interstate wholesale rates as a reasonable operating expense." Id. at 38. That court determined, as do we, that the proper place to question the reasonableness and prudence of a wholesale utility rate is in the proceeding before the FERC. The PSC is preempted by the federal government from reviewing the reasonableness of the components of the BPA wholesale electric rate increase. The result must be that the PSC can accept the federally approved wholesale rate as given and decline to require Wyoming distribution utilities to prove that such wholesale rates are just and reasonable under Wyoming ratemaking law and standards. Once the FERC proceedings are complete, the PSC is required to accept those rates as

reasonable, and the PSC can do nothing but accept those rates as given.

All of the foregoing is not to say that LV is required to purchase its electricity from BPA. During a full rate hearing, it may be shown that there is a cheaper source of supply available. Appellants refer us to the case of *Pike County Light and Power Company-Electric Division v. Pennsylvania Public Utility Commission*, 77 Pa. Cmwlth. 268, 465 A.2d 735 (1983). That case involved an electric distribution company, Pike County, which contracted for its electric supply with Orange and Rockland Utilities, of which Pike was a wholly owned subsidiary. The Pennsylvania PSC found evidence of management imprudence by Pike County in failing to take advantage of available cheaper sources of supply. The court said:

" * * * [T]he action by the PUC which is challenged here is not a regulation of wholesale rates nor a determination that Orange and Rockland's wholesale rates are unjust and unreasonable. It is urged that the PUC action is a regulation only of Pike's retail rates, and as such proceeded, not from an analysis of Orange & Rockland's cost of service data, analysis within the exclusive jurisdiction of the FERC, but rather from analysis of Pike's cost of service and comparison with alternative costs of purchased power. Therefore, it is argued, the PUC action does not intrude on the exclusive jurisdiction of the FERC. We agree.

" * * * So while the FERC determines whether it is against the public interest for Orange & Rockland to charge a particular rate in light of its costs, the PUC determines whether it is against the public interest for Pike to pay a particular price in light of its alternatives. The regulatory functions of the FERC and the PUC thus do not overlap, and there is nothing in the federal legislation which preempts the PUC's authority to determine the reasonableness of a utility company's claimed expenses. * * * " Id., 465 A.2d at 737–738.

What appellants fail to notice about the Pike case is that it was a full rate case. The PSC periodically conducts a full rate hearing for all Wyoming utilities. We are here considering a pass-through case. To require a full rate hearing every time a pass-through is asked for would be unrealistic and next to impossible, as such could happen every other month. Appellants worry about widow Murphy, a person symbolic of LV's rate payers, sitting in her cold house with no hot water. We worry too, but were LV required to process a full rate case for every pass-through, widow Murphy would be that much colder, as she would not only have to pay for her electricity, she would have to pay for that much more administration and bureaucracy. We do not think that requiring rate hearings every other month is going to put the hot water back in widow Murphy's bathtub.

The present PSC policy is to allow a utility to pass-through a wholesale commodity cost increase to its customers without a full rate proceeding only when:

"* * * A, the basis for the proposed pass-through is a valid wholesale commodity cost increase beyond the Commission's control.

"B, the utility's actual rate of return is reasonable and at or below the return authorized by the Commission and allowing the pass-through will not result in the utility earning greater than the authorized return.

"C, the pass-through is applied in an equal and proportionate manner to all the utility's service classes with consideration given to the nature and level of the wholesale increase." Transcript of Hearing Proceedings, January 18, 1983, p. 55.

 We approve of this policy, and as all of the requirements were met, we hold that the pass-through was properly granted. The proper place to consider possible alternative sources of supply is during a rate hearing. This was done during LV's last rate hearing, and a discussion relative thereto was had during the hearing for this pass-through. Also, at LV's last rate hearing, the rate of return authorized by PSC for LV was 9.96 percent. With the pass-through here granted, LV's rate of return is 8.60 percent, which is still 1.36 percent below that authorized. In fact, the pass-through did not affect LV's rate of return at all; nothing was passed through except the FERC approved increase in the wholesale rate charged by BPA for electricity. If the pass-through were not allowed, LV would have been forced to operate at a loss or close its doors.

The rate increase was just and reasonable under the circumstances. The order of the PSC is affirmed.

ROSE, Justice, dissenting.

The crux of this appeal concerns the degree of scrutiny which the Public Service Commission of Wyoming (PSC) must exercise over a utility's request to increase its retail rates in order to pass through to consumers a federally approved increase in the cost of wholesale electricity. The majority hold that the PSC must accept a pass-through rate increase as just and reasonable since federal law preempts the state regulatory agency from reviewing the reasonableness of the underlying wholesale rate approved by the Federal Energy Regulatory Commission (FERC). This holding depends upon the proposition that FERC approval of the wholesale supplier's rate automatically confers reasonableness upon the local utility's decision to pay that rate and obtain reimbursement from its customers. In my judgment, the majority decision, which permits the PSC to assume the reasonableness of a pass-through rate increase, conflicts with our statutory requirement that any rate increase—pass-through or otherwise—be proven just and reasonable before approval by the PSC.

Under § 37–2–120, W.S.1977, the PSC is required to conduct a public hearing prior to any change in rates. Only "just and reasonable" rates may be approved, § 37–3–101, W.S.1977, 1984 Cum.Supp., and the utility bears the burden of establishing the propriety of its proposed rate increase:

"(a) At any hearing as provided in this act involving an increase in rates or charges sought by a public utility, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the utility." Section 37–3–106(a), W.S.1977.

We examined these statutory provisions in *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming*, Wyo., 627 P.2d 173 (1981), and concluded that a natural gas utility's actual payment for fuel was not enough to entitle it to pass the cost on to its consumers. Rather, the utility "had the additional burden of establishing [before the PSC] that the expenditure was a just and reasonable cost of purchasing gas." 627 P.2d at 177. Similarly, in the case at bar the PSC had a statutory obligation to ascertain whether the applicant, Lower Valley Power & Light Company (Lower Valley), acted reasonably in paying the increased rate for wholesale electricity, in light of all of the available management alternatives.

The Commonwealth Court of Pennsylvania recently reviewed a factual situation similar to the instant case in *Pike County Light and Power Company—Electric Division v. Pennsylvania Public Utility Commission*, 77 Pa.Cmwlth. 265, 465 A.2d 735 (1983). In that case, Pike County Light and Power sought a retail rate increase to cover a wholesale rate increase imposed by its federally regulated supplier. The Pennsylvania Public Utility Commission denied the increase. Pike County Light and Power argued that the commission lacked authority to deny the requested retail rate increase since, under federal law, FERC possessed exclusive jurisdiction to set the underlying wholesale interstate rate. In rejecting that argument, the Pennsylvania court reasoned that FERC's examination of the data of the interstate supplier did not include consideration of the local utility's cost-of-service data or the availability of alternative sources of wholesale energy. These latter concerns fell within the exclusive jurisdiction of the state commission. Since the spheres of control of the two regulatory agencies did not overlap, the state agency properly reviewed the reasonableness of Pike County Light and Power's claimed costs. The reasoning of the Pennsylvania court bears repeating in full:

"In carrying out its regulatory function, the FERC examines the cost of service data of Orange & Rockland [the wholesale supplier] to determine that its wholesale rates provide a fair return to the utility's stockholders without being unfair to Orange & Rockland's purchasers. The FERC does not analyze Pike's cost of service data or purchased power alternatives in making its determination. The FERC focuses on Orange & Rockland to determine whether it is just and reasonable for that company to charge a particular rate, but makes no determination of whether it is just and reasonable for Pike to incur such a rate as an expense. The PUC, on the other hand, has no jurisdiction to analyze Orange & Rockland's cost of service data and makes no determination as to the reasonableness for Orange & Rockland to charge its rates. The PUC focuses on Pike and its cost of service data to determine whether it is reasonable for Pike to incur such costs in light of available alternatives. So while the FERC determines whether it is against the public interest for Orange & Rockland to charge a particular rate in light of its cost, the PUC determines whether it is against the public interest for Pike to pay a particular price in light of its alternatives. The regulatory functions of the FERC and the PUC thus do not overlap, and there is nothing in the federal legislation which preempts the PUC's authority to determine the reasonableness of a utility company's claimed expenses. In fact, we read the Federal Power Act to expressly preserve that important state authority." [1] (Emphasis omitted.) 465 A.2d at 738.

---

1. The Federal Power Act provides in pertinent part:

"(a) It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected

In similar fashion, FERC's approval of wholesale electricity rates in the present case included no determination that Lower Valley acted in the public interest in paying such rates in light of available alternatives. Unlike the Pennsylvania court, however, a majority of this court conclude that the state agency also lacks responsibility for reviewing the reasonableness of Lower Valley's pass-through rate increase. Accordingly, consumers in this state must pay for their electricity at a rate which has not been scrutinized by any regulatory agency for reasonableness in light of the utility's particular circumstances.

The majority rely on *Northern States Power Company v. Hagen*, N.D., 314 N.W.2d 32 (1981), in holding that the PSC cannot inquire into the reasonableness of a utility's retail rate increase which stems from a federally approved wholesale rate hike. In that case, however, the state regulatory commission considered and determined the propriety of a utility's expense for wholesale electricity, which expense the FERC had previously allowed incident to its jurisdiction over the applicant/utility. That is, the state agency in *Northern States Power Company* attempted to rule on the identical question previously decided by the federal authority. Given that situation, the Supreme Court of North Dakota properly ruled that the appropriate place to determine the reasonableness and prudence of a particular expense as it affects wholesale charges is in the proceeding before the FERC. 314 N.W.2d at 38. Conversely, in the case at bar, no regulatory agency has ever reviewed the reasonableness of Lower Valley's expenditures for wholesale energy

in light of alternative sources. Such a determination by the PSC would not duplicate the efforts of the FERC.

The majority say that the availability to Lower Valley of a more advantageous source of energy must be determined in connection with a full rate hearing, not a pass-through case. However, as noted above, our regulatory statutes do not exempt from review pass-through rate increases. Rather, *any* increased charge must be proven just and reasonable at a public hearing. Sections 37–2–120, 37–3–101, and 37–3–106(a), supra.

The PSC functions in place of the forces of competition to protect the consumer from unreasonable and unjust charges, whether they arise as a result of pass-through increases or other factors. As we said in *McCulloch Gas Transmission Company v. Public Service Commission of Wyoming*, supra,

> "* * * what is just and reasonable is to be decided on a case-by-case basis. The public interest is to be given paramount consideration; desires of a utility are secondary. *Big Horn Rural Electric Co. v. Pacific Power & Light Co.*, Wyo.1964, 397 P.2d 455. The purpose of the PSC's authority is to protect the public from utilities affected with a public interest." 627 P.2d at 179.

I conclude that PSC's present summary procedure for reviewing a pass-through rate increase violates Wyoming's regulatory scheme, with the result that electricity customers fail to receive that protection, authorized by the legislature, which mini-

---

with a public interest, and that Federal regulation of * * * that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States.

"(b) The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but shall not apply to any other sale of elec-

tric energy * * *. The Commission shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction, except as specifically provided in this subchapter and subchapter III of this chapter, over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter." 16 U.S.C. § 824(a) and (b).

mizes the possibility of unjust and unreasonable rates.

I would have reversed.