MONTANA–DAKOTA UTILITIES CO., Petitioner,

v.

The **WYOMING PUBLIC SERVICE COMMISSION;** Charles E. Johnson; John R. Smyth; and Nels J. Smith, in their official capacities as Commissioners of the Wyoming Public Service Commission, Respondents.

No. 87–35.

Supreme Court of Wyoming.

Dec. 18, 1987.

Bruce S. Asay of Kline, Buck & Asay, Cheyenne, and Steven G. Gerhart, Lester H. Loble II, and Cynthia J. Norland of Montana–Dakota Utilities Co., Bismarck, N.D., for petitioner.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., Roger C. Fransen, and Robert A. Nicholas, Asst. Attys. Gen., for respondents.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

MACY, Justice.

This case comes before us on a certification from the district court. We are asked to review an order of the Wyoming Public Service Commission (Commission) granting a pass-on rate increase and reducing an incentive award which previously had been granted.

We affirm.

On November 29, 1985, the Federal Energy Regulatory Commission (FERC) approved a rate increase for Williston Basin Interstate Pipeline Company (Williston). Williston is the sole supplier for petitioner Montana–Dakota Utilities Co. (MDU). On April 30, 1986, MDU filed an application with the Commission for authority to pass on this increase in gas costs.

The Commission's order granted MDU the rate increase for the supply cost increase from Williston which was authorized by FERC. The order also reduced an incentive award, which previously had been granted to MDU, by the amount of the current rate increase.

■ The primary issue for determination in this case relates to the Commission's interpretation of the incentive award statute, § 37-3-115, W.S.1977. In particular, the question is whether the Commission can reduce an incentive award after the award has been granted.

The incentive award statute, § 37-3-115, states:

"In the case of a utility furnishing natural gas, if the utility decreases its cost of natural gas, not less than ninety percent (90%) of the decrease in the cost shall be passed on to the consumer and in addition to other factors allowed by the commission in setting rates the commission may allow the utility to add to its rate not more than ten percent (10%) of the difference between its previous cost for natural gas and its new cost for natural gas."

Read by itself, the statute makes no provision for a reduction in the incentive award after one has been granted. However, when the statute is interpreted in conjunction with the other enabling statutes, the Commission has the authority to reduce an incentive award. The following statutes

give an outline of the Commission's authority:

Section 37–2–112, W.S.1977.

"The commission shall have general and exclusive power to regulate and supervise every public utility within the state in accordance with the provisions of this act."

Section 37–2–121, W.S.1977.

"If upon hearing and investigation, any rate shall be found by the commission to be inadequate or unremunerative, or to be unjust, or unreasonable, or unjustly discriminatory, or unduly preferential or otherwise in any respect in violation of any provision of this act, the commission may fix and order substituted therefor such rate as it shall determine to be just and reasonable and in compliance with the provisions of this act. Such rate so ascertained, determined and fixed by the commission shall be charged, enforced, collected and observed by the public utility for the period of time fixed by the commission."

Section 37–2–127, W.S.1977, in pertinent part.

"In addition to the powers herein specifically granted, the commission shall have such implied or incidental powers as may be necessary and proper, effectually to carry out, perform and execute all the powers so granted."

Section 37–2–205(d), W.S.1977.

"*Commission may investigate, fix rates, etc.*—Upon its own motion, or on complaint of any person the commission shall have power to investigate and determine whether the competitive rates, charges and service existing between any public utilities are fair, just and reasonable, after hearing thereon to determine, fix and order such rates, charges, regulations and remedies as will establish reasonable and just rates, between said competing public utilities, and between said public utilities and their customers and patrons."

We previously have held that the Commission has continuing jurisdiction to maintain rates which are just and reasonable. *Big Horn Rural Electric Company v. Pacific Power & Light Company*, Wyo., 397 P.2d 455 (1964). In line with continuing jurisdiction and the statutory duty to maintain rates which are just and reasonable, the Commission necessarily has the "implied or incidental" authority to reduce a previously granted incentive award. Although statutes creating and empowering the Commission must be strictly construed and any reasonable doubt of the existence of any power must be resolved against the exercise thereof, *Public Service Commission v. Formal Complaint of WWZ Company*, Wyo., 641 P.2d 183 (1982), the statute empowering the Commission to award an incentive cannot be read in isolation. We uniformly have held that, in ascertaining the meaning of a statute, "we should look at all statutes which relate to the same subject or which have the same general purpose." *Kamp v. Kamp*, Wyo., 640 P.2d 48, 51 (1982).

Further, it has been stated that:

"The formal or informal interpretation or practical construction of an ambiguous or uncertain statute or law by the executive department or other agency charged with its administration or enforcement is entitled to consideration and the highest respect from the courts, and must be accorded appropriate weight in determining the meaning of the law, especially when the construction or interpretation is * * * contemporaneous with the first workings of the statute * * *." 2 Am. Jur.2d, Administrative Law § 241 at 66–67 (1962).

See also *WYMO Fuels, Inc. v. Edwards*, Wyo., 723 P.2d 1230 (1986).

Section 37–3–115 states that the Commission *may* allow *not more than* ten percent of the savings. Therefore, the Commission's continuing jurisdiction gives it the authority to adjust an incentive award, either up or down, after the original grant, so long as the incentive award remains between zero and ten percent of the savings and it is just and reasonable. The harmonious interpretation of the incentive statute gives the Commission the limited discretionary authority to reduce the incentive award along with the limited discretionary authority to award it originally.

■ The second issue raised in this case is whether the Commission can adjust an incentive award in a pass-on proceeding instead of during a full-rate case proceeding. Originally, pass-on proceedings were created to quickly approve the cost adjustments which previously were determined, in large part, in FERC hearings. *Spence v. Smyth*, Wyo., 686 P.2d 597 (1984). Likewise, an incentive award is determined primarily by the costs passed on and is tied to the savings the utility can achieve by reducing its costs. Due to the fact that an incentive is cost based, it is appropriate to award and reduce the incentive in the same proceeding when the costs are passed on. If the incentive award cannot be adjusted in a pass-on proceeding, the incentive award, both up and down, will lag behind the costs upon which it is based. Incentive awards, therefore, do not require full-rate case proceedings in order to be adjusted fairly.

■ MDU's third argument that the Commission has improperly used adjudicative proceedings to promulgate a rule is without merit. "Ever since the Chenery case of 1947, the law has been clear that an agency may make law either through rulemaking or through adjudication." 2 Davis, Administrative Law Treatise § 7:25 at 122 (2d ed.1979); see also *Securities and Exchange Commission v. Chenery Corporation*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995, reh. denied 332 U.S. 747, 68 S.Ct. 26, 92 L.Ed. 367 (1947). While § 16–3–101(b)(ix)(D), W.S.1977, clearly excludes agency decisions in contested cases from the definition of a rule, it is beyond dispute that an agency can use prior contested case decisions as precedent. *Squaw Transit Company v. United States*, 574 F.2d 492 (10th Cir.1978). Particularly when setting rates, using adjudicative proceedings allows a flexibility which is not available in rule making. The Commission has not abused its discretion by adopting that approach. Each rate adjustment, whether cost or incentive, requires a finding that the rate will be just and reasonable. Such a discretionary finding may not adequately be addressed by a set of rules. This desired flexibility is reflected by previous notices and orders of the Commission in instances where incentive awards were not adjusted when the cost increases were minimal.

■ The final issue raised by MDU is whether a portion of the Commission's conclusions is supported by substantial evidence. The language at issue is as follows:

"17. The substantial evidence of this case shows that the exclusion of incentive awards from the statutory mandated review process may result in eventual unjust, unfair and unsupported rates and rate increases.

"The evidence of this case shows that subsequent to Montana–Dakota's efforts that supported the incentive award granted to it by the Commission, Montana–Dakota on its own motion acted before the FERC to transfer to its sister corporation, Williston Basin, Montana–Dakota's gas purchase contracts and its own low-cost gas production properties (a portion of its own, low-cost gas supply paid for by ratepayers through rate increases designated by this Commission for gas discovery activity, for the purpose of lowering gas supply costs.) Although the interventions of the state commission before the FERC in that case resulted in the FERC granting substantial rate savings to the intrastate utility customers over that plan proposed by Montana–Dakota, the long-term result was that the states lost jurisdiction over Montana–Dakota's gas supply, including the loss in perpetuity of Montana–Dakota's then owned low-cost gas supply sources."

The standard of review for substantial evidence is well established in Wyoming:

" 'We examine the entire record to determine if there is substantial evidence to support an agency's findings, and if there is, we will not substitute our judgment for that of the agency. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it may be less than the weight of the evidence but cannot be contrary to the overwhelming

weight of the evidence.' *Wyoming Insurance Department v. Avemco Insurance Company*, Wyo., 726 P.2d 507, 509 (1986) (citation omitted)." *Teton Valley Ranch v. State Board of Equalization*, Wyo., 735 P.2d 107, 113 (1987).

The relevant evidence available to the Commission for these conclusions included:

1. The testimony of Stephen N. Ellenbecker, rate analyst accountant for the consumer representative staff of the Commission, Max A. DeBolt, the mayor of the City of Sheridan, and Jim Perkins, as the legislative representative for United Transportation Union Local 951, indicating that fairness requires the incentive award to be adjusted to reflect later rate increases;

2. The orders issued in the similar cases of Application of Cody Gas Company, Docket No. 9546 Sub 38, and Application of Cheyenne Light, Fuel and Power Company, Docket No. 9511 Sub 93, adjusting the incentive awards on the basis of later rate increases;

3. The testimony of C. Wayne Fox, the vice president of regulatory affairs for MDU, and Donald R. Ball, the manager of revenue requirements for MDU, as to MDU's corporate relationship with Williston, the process of Williston's request to FERC for a rate increase, and the Commission's role in that process; and

4. The Williston compliance filing containing the formal statements which Williston made to FERC for its rate increase.

We previously have said that:

" 'If there is substantial evidence to support a finding, as there is here, the ultimate weight to be given that evidence is to be determined by the agency in light of its expertise and the experience of its members in such matters.' " *Beddow v. Employment Security Commission of Wyoming*, Wyo., 718 P.2d 12, 14 (1986), quoting *Big Piney Oil & Gas Company v. Wyoming Oil and Gas Conservation Commission*, Wyo., 715 P.2d 557, 562 (1986).

Although the Commission's conclusions may be stated more adversely than necessary, the conclusions are supported by substantial evidence.

Having concluded that the Commission has properly interpreted the incentive statute, used the proper procedure, and supported the questioned conclusions with substantial evidence, we affirm the Commission's order.

Affirmed.

URBIGKIT, J., filed a dissenting opinion in which THOMAS, J., joined.

URBIGKIT, Justice, dissenting, with whom THOMAS, Justice, joins.

By statutory construction in this case, the majority create what the legislature by explicit decision declined to do. From that interpretive result, I respectfully dissent.

In 1984, an interim legislative committee of the Wyoming legislature was challenged to find ways to reduce natural gas costs to retail consumers by securing less expensive supply sources. Normally, any answer for the utility would invite abrogation by them of take-or-pay purchase contracts or at least long-term purchase arrangements. For this purpose, two bills were presented to the Joint Corporations, Elections and Political Subdivisions Interim Committee in meeting February 13, 1984. One, 84 LSO–295 L1 was sponsored by Representative James A. Barlow, and a second was presented by the Public Service Commission (PSC). The Barlow bill, amended in committee to its legislative form as House Bill 173, was introduced by the joint committee and passed by the legislature without further amendment in Ch. 45, S.L. of Wyoming 1984 as § 37–3–115, W.S.1977. The PSC version, in this budget session where a two-thirds vote was required, apparently was never introduced.

Under the purview of the newly enacted law, petitioner Montana–Dakota Utilities Co., a retail supplier of natural gas in areas of the Big Horn Basin in northeastern Wyoming, applied for and was granted an incentive award of ten percent of a substantially decreased gas purchase cost, with the 90 percent of the reserved saving as a benefit to its consumers. Sometime subsequent to the grant of incentive award,

a pass-on increase occurred after approval of the wholesaler increase by the Federal Energy Regulatory Commission (FERC). Upon submission of the pass-on cost to the state regulatory agency, in accord with the balancing account process then used to accommodate increases or decreases in cost of purchased gas, the PSC reduced the amount of this increase by a proportionate amount of the incentive previously extended.

In dissenting to this court's approval of the rate-making activity in the pass-on price application, I find the agency's decision and this court's approval faulty in four particulars.

It is first apparent that what the PSC failed to be granted by the legislature they now seek to achieve by direct action unauthorized by statute. Nothing can be clearer from the documentation available, including the considered bills and the committee reports, but that the legislature specifically was given the opportunity and then as specifically rejected the PSC proposal which would authorize the Commission to offset increases by previously granted reduction incentives.[1] The statutory language is clear, and the intent was defined. *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958); *McArtor v. State*, Wyo., 699 P.2d 288 (1985); Sutherland, Statutory Construction § 46.01 at 73 (4th ed.1984).

Secondly, at least in general terms in absence of the incentive reduction, the pass-on would have been factored against an even higher purchase gas cost which would have existed except for the legislatively provided incentive to secure the cheapest supply. As witness to the "price" for attempted fuel supply cost reductions, the proliferated national litigation between suppliers and utilities can be perceived as the latter has attempted to break purchase contracts which may have in part particularly employed take-or-pay provisions. On occasion, the cost to the purchaser in attempting to break the contract has been astronomical. This same problem of litigative risk occasioned the Wyoming legislature's effort to abrogate take-or-pay at least in part by amendment of § 15–1–103(c), W.S.1977 by Ch. 172, S.L. of Wyoming 1985, which enactment in different particulars is presently before this court in *K N Energy, Inc. v. City of Casper*, No. 86–69. As examples of the many take-or-pay cases, see *MGTC v. Northern Utilities, Inc.*, Wyo., 733 P.2d 607 (1987); *Transcontinental Gas Pipe Line Corp. v. State Oil and Gas Board of Mississippi*, 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732, reh. denied 475 U.S. 1091, 106 S.Ct. 1485, 89 L.Ed.2d 738 (1986); *Office of Consumers' Counsel, State of Ohio v. F.E.R.C.*, 826 F.2d 1136 (D.C.Cir.1987); *PGC Pipeline, Div. of LPC Energy, Inc. v. Louisiana Intrastate Gas, Division of Celeron Corp.*, 791 F.2d 338 (5th Cir.1986). This price for gas purchase cost reduction is extended litigation resulting from attempted purchase-contract abrogation. The incentive given of ten percent was in part to

[1] Although in part directed by 12 years' experience in the Wyoming legislature, I do not take such a dogmatic rejection of intent documentation, including affidavits, as is evidenced in this decision. Unfortunately, the Wyoming legislature is not afforded the transcripts and extensive documentation of history of action of legislative decisions and conclusions from which intent can be discerned, as is available to the United States Supreme Court from congressional reports and records. In this case, however, one need not consider the affidavits of members, such as was presented by Representative Barlow, to acknowledge intent from bill acceptance and rejection, demonstrated by the written committee report. *Blanchette v. Connecticut General Insurance Corporations*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *N.L.R.B. v. Bell Aerospace Co. Division of Textron, Inc.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *McArtor v. State*, Wyo., 699 P.2d 288 (1985); *State v. Laemoa*, 20 Or.App. 516, 533 P.2d 370 (1975). As Justice Frankfurter said:

" * * * In matters of statutory construction also it makes a great deal of difference whether you start with an answer or with a problem." Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L.Rev. 527, 529 (1947).

See Conference on Statutory Interpretation, *The Role of Legislative History in Judicial Interpretation: A Discussion Between Judge Kenneth W. Starr and Judge Abner J. Mikva,* 1987 Duke L.J. 361 (1987).

offset that litigative ill-will and cost detriment to be incurred.[2]

In third objection, I would agree with the petitioner that the pass-on process was the wrong time and place for the PSC to consider discontinuance or reduction of the granted incentive. Petitioner accurately states that the procedural result is to effectuate state agency control over a part of the rate-making proceedings reserved to the federal agency, FERC, for interstate utility regulation. *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed.2d 912 (1951). More specifically, if the granted incentive is to appropriately address the utility rate of return, it should be considered in a general rate proceeding where the income benefit from the reduced cost becomes part and parcel of the rate analysis to be comprehensively considered. In fact, by this action, this court has ignored the construction and application of the pass-on (pass-through) proceeding only recently adopted in *Spence v. Smyth*, Wyo., 686 P.2d 597, 601 (1984):

"The present PSC policy is to allow a utility to pass-through a wholesale commodity cost increase to its customers without a full rate proceeding only when:

"'* * * A, the basis for the proposed pass-through is a valid wholesale commodity cost increase beyond the Commission's control.

"'B, the utility's actual rate of return is reasonable and at or below the return authorized by the Commission and allowing the pass-through will not result in the utility earning greater than the authorized return.

"'C, the pass-through is applied in an equal and proportionate manner to all the utility's service classes with consideration given to the nature and level of the wholesale increase.' Transcript of Hearing Proceedings, January 18, 1983, p. 55.

"We approve of this policy, and as all of the requirements were met, we hold that the pass-through was properly granted."

Finally, in a broad policy consideration which may have more general concern than the specific issues of this case, I would agree with appellant that a decision of this character involving an industrywide application should not have promulgated in a hit-or-miss case adjudication, but in a general rule-adoption process.[3] Utilization of

---

2. I would concur in factual analysis with the dissenting commissioner:

"The governing substantial facts are these: the applicant, through its predecessor, successfully reduced gas costs. It applied for, and was granted, a 10% incentive award for that reduction.

"The majority errs when it attempts to separate gas and non-gas costs in the case of a producer/supplier as referred to in the following language set forth on page 34 of the order:

"'... and the total costs of Montana-Dakota's contract gas suppliers, including their non-gas costs, were included in the award calculation.'

"The 'contract gas suppliers' referred to were producers. Analysis of a producer's costs consisting of drilling, casing, tubing, pumping, treating, separation, taxes and royalties shows that, with the possible exception of royalties, all would be classified 'non-gas costs.' However the entire price paid the producer/supplier is 'gas cost' to the first purchaser.

"While the unique circumstances of this case complicate the matter, they do not change the fact that the gas cost reduction is still effective in that it is keeping the price of gas lower than would otherwise be the case and should

be continued despite the increase in non-gas costs of the supplier pipeline. Therefore, I disagree with the rationale used to reduce the incentive award and dissent from the decision, in part, as set forth above."

3. The Wyoming Administrative Procedure Act, § 16-3-101, W.S.1977, 1982 Replacement, provides in pertinent part:

"(ix) 'Rule' means each agency statement of general applicability that implements, interprets and prescribes law, policy or ordinances of cities and towns, or describes the organization, procedures, or practice requirements of any agency. The term includes the amendment or repeal of a prior rule, but does not include:

"(A) Statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public; or

"(B) Rulings issued pursuant to section 6 [§ 16-3-106] of this act; or

"(C) Intraagency memoranda; or

"(D) Agency decisions and findings in contested cases; or

"(E) Rules concerning the use of public roads or facilities which are indicated to the public by means of signs and signals; [or]

the rule-making criteria of the Wyoming Administrative Procedure Act, § 16–3–101, et seq., W.S.1977, 1982 Replacement, as well as the hearing provisions of the rules of this administrative agency, with all of the governmental attributes and benefits, should have been required of any agency attempting to promulgate what it had been denied in requested legislative enactment. Noteworthy as discerned from the authorities, it is not easy to differentiate the appropriate adjudicatory proceeding from the confined rule-making processes. O'Reilly, Administrative Rulemaking § 2.02 at 30 (1983). This utility-rate factor as applied here to all the members of the class as a general condition, does not afford any difficulty of proper placement within the rule-making responsibilities of the administrative agency. *Ford Motor Company v. F.T.C.,* 673 F.2d 1008 (9th Cir.1981), cert. denied 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed. 2d 394 (1982). See Schwartz, Administrative Law § 4.16, p. 191; Bonfield, State Administrative Rule Making, supra, § 4.2.3 at 106.

The consideration to be reviewed is not, as the court would find, if precedent can be used for adjudicatory decisions to be determined, but instead whether a general principle on rate regulation can be enunciated and effectuated without compliance with statutory provisions of the Wyoming Administrative Procedure Act. The court invites administrative agencies to ignore the protective features fundamental to legislative adoption of the Wyoming statute. Both agencies and this court will come to suffer, but more so the public for whom the administrative agencies were created to serve. Conversely, if this court suggests that an ad hoc adjustment of incentive is occurring in pass-on proceeding, then clearly discriminatory action is evidenced, and, for a totally different reason, the result is improper. *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); *Bluefield Waterworks & Improvement Co. v. Public Service Commission of West Virginia,* 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923).

Although not necessarily for all of the same reasons, I would in conclusion agree with the dissenting commissioner, and for the foregoing reasons dissent from approval of the Wyoming Public Service Commission's pass-through proceeding, rate-making activities in incentive reduction.

---

"(F) Ordinances of cities and towns." Section 16–3–101(b)(ix).

See the often-quoted statement in *Securities and Exchange Commission v. Chenery Corporation,* 332 U.S. 194, 202, 67 S.Ct. 1575, 91 L.Ed. 1995, reh. denied 332 U.S. 747, 68 S.Ct. 26, 92 L.Ed. 367 (1947):

" * * * The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future."

Bonfield, State Administrative Rule Making § 4.1.2 at 103 (1986):

"The difference in the procedures required when an agency makes law by rule rather than by order should not, however, be minimized. Indeed, as will be seen, those differences are very large. Therefore, the means chosen by an agency to make its law has a substantial impact on the procedural rights of affected persons."

In the terminology stated in *N.L.R.B. v. Bell Aerospace Co. Division of Textron, Inc.,* supra, 416 U.S. at 294, 94 S.Ct. at 1771, I would find this under Wyoming law to be a case "where * * * reliance on adjudication would amount to an abuse of discretion," as well as a violation of § 16–3–101(b)(ix).